Opinion
 

 GAUT, J.—
 

 1.
 
 Introduction
 

 These two separate but related appeals arise out of a partition action involving the sale of real property by a receiver. In the first appeal, defendant and appellant Aquila, Ltd., a California limited partnership (Aquila), one of the former owners of the subject real property, argues that the court should not have awarded the receiver, William A. Benneyan (Benneyan), both an hourly fee and a fee based on 4 percent of the purchase price of the
 
 *1367
 
 property. In the second appeal, intervener and appellant Bartlett
 
 [1]
 
 contends that the court should have awarded part of the broker’s commission for the sale of the property to Bartlett rather than all of the commission to another broker, J. John Anderholt (Anderholt).
 

 Both appeals are taken from the court’s final order of July 26, 1996, approving payment of fees to the receiver of $217,867.07
 
 [2]
 
 and payment of a 5 percent commission to Anderholt of $252,500 and denying payment of a commission to Bartlett. Bartlett’s appeal is also taken from the court’s order denying injunctive relief on September 13, 1996.
 

 We affirm the court’s order in part and reverse in part for the reasons discussed below.
 

 2.
 
 The Aquila Appeal
 

 The first amended complaint for partition was filed on December 1, 1994. Defendant Aquila filed an answer on May 4, 1995. On July 24, 1995, the Melikian plaintiffs and defendant Aquila stipulated to the appointment of Benneyan as a receiver for the subject property. On August 10, 1995, the court ordered his appointment pursuant to said stipulation. On August 31, 1995, the receiver filed a petition for instructions, including the matter of his fees. In the petition, the receiver requested fees of $125 an hour and compensation on the sale of the property in the amount of 4 percent of the gross sale price. The request was based on a previous written agreement for compensation in which Benneyan was to receive a fee of $8,000 per month and a commission of 4.5 percent on the sale of the property. No opposition was filed to the receiver’s petition. On September 11, 1995, the court entered an order confirming that the receiver’s fees would include compensation of $125 per hour plus the sum of 4 percent of the purchase price of the subject property.
 

 The property was sold for the price of $5,050,000 to the highest bidder, Apollo, Inc., after confirmation at a court hearing conducted on March 8, 1996. Thereafter, on March 27, 1996, Aquila filed a motion to amend, correct, or modify the court order of September 11, 1995, by removing the provision for payment to the receiver of 4 percent of the purchase price. In its motion, Aquila maintained that the 4 percent fee had been included in error. The receiver opposed Aquila’s motion, denying that the 4 percent fee was a mistake. Ultimately, the court denied the motion and awarded the
 
 *1368
 
 receiver compensation including both an hourly fee and the 4 percent fee. In its minute order, the court stated: “The court notes that the parties seem to have agreed to the formula for the referee’s fees in advance. There appears to be no basis for the court to change that agreement. While the court is not bound by that agreement, there is substantial support for such a fee. The efforts of the referee have contributed substantially to the sale of the subject property. Without the sale the whole asset would have been lost to foreclosure by the first trust deed holder, BCP11.” The total amount of compensation to the receiver was $227,464.71, including the 4 percent fee of $202,000.
 

 The amount of fees awarded to a receiver is “in the sound discretion of the trial court and in the absence of a clear showing of an abuse of discretion, a reviewing court is not justified in setting aside an order fixing fees.”
 
 (People
 
 v.
 
 Riverside University
 
 (1973) 35 Cal.App.3d 572, 587 [111 Cal.Rptr. 68].) Additionally, Code of Civil Procedure section 873.010, subdivision (b)(3), provides that the trial court may fix the amount of compensation payable to a referee in a partition action. Code of Civil Procedure section 1023 also allows the court to fix a reasonable fee for a referee.
 

 On appeal, Aquila argues that the court abused its discretion in awarding Benneyan any fee greater than his hourly fee. But we perceive no abuse of discretion.
 

 The trial court found that the parties had agreed on the method for calculating the receiver’s fees. Additionally, the trial court found that the receiver had earned his fee by his efforts to sell the subject property. The trial court’s findings are supported by the record and must therefore be accorded a deferential standard of review.
 
 (Crawford
 
 v.
 
 Southern Pacific Co.
 
 (1935) 3 Cal.2d 427, 429 [45 P.2d 183].) Therefore, we affirm the trial court’s order of July 26, 1996, as it pertains to the fees awarded to Benneyan.
 

 Although this court may make an award of fees for the services of a receiver’s counsel rendered on appeal, we are not disposed to do so here. Benneyan has already been awarded a total fee substantially in excess of an ordinary fee. Accordingly, Benneyan’s request for an award of attorney fees is denied.
 
 (Schreiber
 
 v.
 
 Ditch Road Investors
 
 (1980) 105 Cal.App.3d 675, 681 [164 Cal.Rptr. 633].)
 

 3.
 
 The Bartlett Appeal
 

 Bartlett procured an offer by Avanti Investment Advisors, Inc., to purchase the subject property for $4,780,000 with a 6 percent commission
 
 *1369
 
 payable to Bartlett. Bartlett concedes it did not have an exclusive listing agreement on the property. At the confirmation hearing on March 8, 1996, Avanti was outbid by Apollo who offered $5,050,000. Apollo was represented by another broker, Anderholt.
 

 Bartlett then filed a complaint in intervention seeking to recover a share of the broker’s commission from the sale. The court denied the claim on the grounds that “[t]he court can find no legal basis for the claim of the intervenors.” Instead, the court awarded a commission of 5 percent to Anderholt.
 

 On appeal, Bartlett argues that it was entitled to receive one-half the commission on the Avanti bid, or one-half of a commission on a sale for $4,780,000. No opposition has been offered by Anderholt, the broker who received all of the commission. The only opposing brief has been filed by plaintiff Raymond Melikian, who primarily argues that the property owners should not be responsible for paying any additional commissions to Bartlett. Bartlett concedes this point in its reply brief but contends that, if it is successful on appeal, it will then have grounds to pursue Anderholt for recovery of its share of the commission.
 

 Code of Civil Procedure section 873.745 provides that, the amount of a broker’s commission on a partition sale “shall be fixed by the court and divided or limited in the manner provided for private sales of real property in decedents’ estates.” Probate Code section 10160 et seq. governs a broker’s compensation for the latter. Pursuant to Probate Code section 10161, notwithstanding any agreement obtained by the broker, the court exercises its discretion to determine a broker’s reasonable compensation.
 
 (Estate of Lopez
 
 (1992) 8 Cal.App.4th 317, 321 [10 Cal.Rptr.2d 67].) A broker who does not have an exclusive listing on property cannot claim a commission for its sale except for two circumstances:
 

 “(1) Where the agent or broker produces the original bid which is returned to the court for confirmation.
 

 “(2) Where the property is sold on an increased bid, made at the time of the hearing on the petition for confirmation, to a purchaser procured by the agent or broker.” (Prob. Code, § 10161, subd. (b).)
 

 In addition, Probate Code section 10165 provides for the method of calculating a broker’s commission where a successful overbid is made at a hearing to confirm an unsuccessful original bid and both bidders are represented by brokers. When a property is sold on an overbid, the broker for the
 
 *1370
 
 original bid receives one-half the commission on that bid and the broker on the overbid receives the other half plus all the commission on the excess:
 

 “(b) The agent or broker who procured the purchaser to whom the sale is confirmed shall be paid one-half of the compensation on the amount of the original bid and all of the compensation on the difference between the original bid and the amount for which the sale is confirmed.
 

 “(c) The other one-half of the compensation on the amount of the original bid shall be paid as follows:
 

 “(1) If the original bid returned to the court is made by a purchaser who was procured by the agent or broker holding a contract under Section 10150 granting the exclusive right to sell the property, the entire one-half of the compensation on the original bid shall be paid to that agent or broker.
 

 “(2) If the original bid returned to the court is made by a purchaser who was procured by a bona fide agent or broker and there is no agent or broker holding a contract under Section 10150 granting the exclusive right to sell the property, the entire one-half of the compensation on the original bid shall be paid to that agent or broker. ...”
 

 Probate Code section 10165, enacted in 1990, reflects a change in the former law. Previously, the applicable Probate Code sections (former §§760, 761, 761.5, & 785) required the original broker to possess a listing agreement in order to claim a commission from a sale based on a successful overbid. (See
 
 Simonini
 
 v.
 
 Passalacqua
 
 (1986) 180 Cal.App.3d 400, 404-406 [225 CaLRptr. 588];
 
 Estate of Brown
 
 (1987) 193 Cal.App.3d 1612, 1615-1617 [239 Cal.Rptr. 147].) Now, under Probate Code section 10165, subdivision (c), the same allocation applies whether or not the original broker has a listing agreement for the property.
 

 The operation of these Probate Code sections in the present case entitles Bartlett to a share of the commission paid for the sale of the subject property. First, under Probate Code section 10161, subdivision (b) (2), as the procuring broker for the successful overbid, Anderholt was entitled to receive a commission on the sale even without an exclusive listing agreement. Under Probate Code section 10165, however, Anderholt must share his commission with Bartlett, the broker for the original bid. Bartlett was entitled to one-half the commission on the Avanti bid whether or not Bartlett had a listing agreement with Benneyan. (Prob. Code, § 10165, subd. (c).) Anderholt was entitled to one-half the commission on the amount of the Avanti bid and all the commission on the difference between the Avanti bid and the amount of the Apollo sale. (Prob. Code, § 10165, subd. (b).)
 

 
 *1371
 
 The Law Revision Commission comment to Probate Code section 10161 confirms that the foregoing is the proper application of these code sections under these factual circumstances. In example 6, Bartlett may be substituted either for broker A or broker B depending on whether Bartlett does or does not have a nonexclusive listing agreement:
 

 “Example 6. No exclusive listing contract; original bidder [Avanti] produced by Broker A [Bartlett]; successful overbidder [Apollo] produced by Broker C [Anderholt]. The personal representative [Benneyan] enters into a nonexclusive contract with Broker A [Bartlett] for the sale of real property of the estate. The contract provides for a commission to Broker A [Bartlett] of 6 percent of the sale price. Broker A [Bartlett] finds a bidder [Avanti] whose bid is returned to the court for confirmation. At the confirmation hearing, the highest bid is made by a different bidder [Apollo] produced by Broker C [Anderholt] who does not hold a contract with the personal representative [Benneyan]. The court confirms the sale to the overbidder [Apollo]. Broker A [Bartlett] is entitled to half of the commission on the original bid. Broker C [Anderholt] is entitled to the other half of the commission on the original bid plus all of the commission on the overbid. See Section 10165(a)(1), (b), (c)(2).
 

 “If the original bidder [Avanti] in this example were produced by Broker B [Bartlett], who does not have a contract with the personal representative [Benneyan], Broker B [Bartlett] would be entitled to the same commission as the broker with a nonexclusive contract in this example, except that the amount of the commission would be subject only to control of the court, and not to contractual limitations.” (See Cal. Law Revision Com. com., 53A West’s Ann. Prob. Code (1991 ed.) § 10161, p. 721.)
 

 Although Bartlett argues that an agreement to pay a 6 percent commission existed between it and Benneyan, the record does not demonstrate the existence of any such contract. The various writings on which Bartlett purports to rely simply reflect an agreement that a completed purchase by Avanti or another purchaser represented by Bartlett would generate a commission to Bartlett that would be subject to court approval. Similarly, the record does not support plaintiff Melikian’s contention that, based on the proposed escrow instructions and purchase and sale agreement for the Avanti purchase, Bartlett’s right to a commission was contractually eliminated if an overbid was confirmed instead of the original bid. As previously discussed, Bartlett’s right to a commission is founded on statute, not contract.
 
 (Estate of Brown, supra,
 
 193 Cal.App.3d at p. 1615;
 
 Estate of Lopez, supra,
 
 8 Cal.App.4th 317.)
 

 
 *1372
 
 By statute, Bartlett is entitled to its share of the 5 percent commission approved by the court. The amount of the commission due to Bartlett would therefore be one-half of 5 percent of the Avanti bid of $4,780,000, or $119,500. Anderholt would be entitled to a commission of $119,500 plus 5 percent of the amount of $5,050,000 minus $4,780,000, or $13,500, for a total commission of $133,000. No additional commission is due from the owners of the property. Instead, Bartlett must recover its share of the commission from Anderholt, who has already been paid the full commission of $252,500.
 

 Because of our conclusion, we do not discuss Bartlett’s argument regarding the court’s denial of injunctive relief on September 13, 1996.
 

 4.
 
 Disposition
 

 We affirm that portion of the order of July 26, 1996, approving the fees paid to Benneyan, the receiver, but deny Benneyan’s request for attorney fees on appeal. We reverse that portion of the order of July 26, 1996, denying payment of a share of the commission to Bartlett, and remand to the trial court with directions to enter a new order allocating the broker’s commission between Bartlett and Anderholt, with Bartlett receiving $119,500 and Anderholt receiving $133,000.
 

 Benneyan shall recover costs, excluding attorney fees, from Aquila on appeal. The remaining parties are to bear their own costs.
 

 Ramirez, P. J., and Richli, J., concurred.
 

 A petition for a rehearing was denied June 10, 1998, and the petition of appellant Aquila, Ltd. for review by the Supreme Court was denied September 2, 1998.
 

 [1]
 

 Bartlett, the intervener and appellant, is collectively Timothy R. Bartlett, Capital Management Group, J.R. Parrish, Baxley Properties, Dick Baxley, and Rupert Chutkow.
 

 [2]
 

 As discussed below, the total compensation to the receiver was $227,464.71.