173 P.3d 1122

HAWAII VENTURES, LLC, Plaintiff–
Appellant/Cross–Appellee,

v.

OTAKA, INC.; Takao Building Co., Ltd.,
formerly known as Takao Building De-
velopment Co., Ltd.; K.K. Kaini Seven,
Yukio Takahashi; Hawaiian Waikiki
Beach, Inc.; Alaka'i Mechanical Corpo-
ration; HewlettPackard Company; Ha-
waii Energy Management Co., LLC., De-
fendants–Appellees/Cross–Appellants,

and

Business Management Group, Inc.; Beach
Snack Express, Inc.; John Does 1–50;
Jane Does 1–50; Doe Partnerships 1–50;
Doe Corporations 2–50; Doe Entities 1–
50; and Doe Governmental Units 1–50,
Defendants,

and

ILWU Local 142 AFL–CIO, and Theodore
H. Smyth, Trustee, Smyth Family
Trusts, Intervenor Defendants–Appel-
lees/Cross–Appellants,

and

Argonaut Insurance Company, Intervenor
Defendant–Appellee/Cross–Appellee,

and

Otaka, Inc. and Hawaiian Waikiki
Beach, Inc., Counterclaimants–
Appellees/Cross–Appellants,

v.

Leucadia National Corporation,
Additional Counterclaim
Defendant.

Patricia Kim Park, Receiver–
Appellee/Cross–Appellee.

Hawaii Ventures, LLC, Plaintiff–
Appellant/Cross–Appellee,

v.

Otaka, Inc.; Takao Building Co., Ltd., for-
merly known as Takao Building Devel-
opment Co., Ltd.; K.K. Kaini Seven,
Yukio Takahashi; Hawaiian Waikiki
Beach, Inc., Defendants–Appel-
lees/Cross–Appellees/Cross–Appellants,

and

Alaka'i Mechanical Corporation; Hew-
lett–Packard Company; Business Man-
agement Group, Inc.; Beach Snack
Express, Inc.; and Hawaii Energy
Management Co., LLC., Defendants–
Appellees/Cross–Appellees,

and

John Does 1–50; Jane Does 1–50; Doe
Partnerships 1–50; Doe Corporations 2–
50; Doe Entities 1–50; and Doe Govern-
mental Units 1–50, Defendants,

and

Theodore H. Smyth, Trustee, Smyth Fam-
ily Trusts, Intervenor Defendants–Appel-
lees/Cross–Appellants/Cross–Appellees,

and

ILWU Local 142 AFL–CIO and Argonaut
Insurance Company, Intervenor Defen-
dants–Appellees/Cross–Appellees/Cross–
Appellant,

and

Otaka, Inc. and Hawaiian Waikiki
Beach, Inc., Counterclaimants–
Appellees/Cross–Appellees,

Leucadia National Corporation, Addi-
tional Counterclaim Defendant–
Appellee/Cross–Appellee.

Patricia Kim Park, Receiver–
Appellee/Cross–Appellee.

Former Employees of Hawaiian Waikiki
Beach Hotel, Party In Interest–Appel-
lee/Cross–Appellee/Cross–Appellant.

Nos. 25344, 26820.

Supreme Court of Hawai'i.

Nov. 23, 2007.

468

Ko-Ching Ning and Jill D. Raznov (of Ning, Lilly & Jones), Honolulu, and Jeffrey S. Harris (of Torkildson Katz Fonseca Jaffee Moore & Hetherington), Honolulu, for Receiver Patricia Kim Park, on the request.

Stephen K.C. Mau, Susan Tius, J. Stephen Street (of Rush Moore, LLP), Honolulu, for Hawaii Ventures, LLC, in opposition.

Sheryl L. Nicholson and Pamela W. Bunn (of Paul Johnson Park & Niles), Honolulu, for Otaka, Inc., Hawaiian Waikiki Beach, Inc., Takao Building Co., Ltd., K.K. Daini Seven, and Yukio Takahashi.

Herbert R. Takahashi, Stanford H. Masui, Danny J. Vasconcellos, and Rebecca L. Covert, Honolulu, for ILWU Local 142, AFL-CIO.

Francis P. Hogan and Mi Yung C. Park (of Ashford & Wriston), Honolulu, for Theodore H. Smyth, Trustee of the Smyth Family Trusts, and Karl V. Willig, Special Litigation Trustee of the Smyth Family Trust.

Robert F. Miller, Honolulu, for Former Employees of Hawaiian Waikiki Beach Hotel.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

## REQUEST FOR REIMBURSEMENT OF FEES AND COSTS

Amended Opinion of the Court by MOON, C.J.

On June 19, 2007, receiver-appellee/cross-appellee Patricia Kim Park [hereinafter, the Receiver or Receiver Park] timely filed a request for reimbursement of fees and costs [1] incurred by her and her retained professionals on appeal in this foreclosure/receivership case. For the reasons discussed herein, we grant in part and deny in part Receiver Park's request for fees and costs.

### I. BACKGROUND

Briefly stated, this consolidated appeal arose out of the Circuit Court of the First Circuit's administration of the foreclosure proceedings of a certain real property, previously known as the Hawaiian Waikiki Beach Hotel [hereinafter, the Hotel or Estate], which administration included, *inter alia*, the appointments of (1) Receiver Park to manage the Hotel pending the foreclosure sale, (2) a commissioner to conduct the sale, and (3) a special master to review Receiver Park's work, and the ultimate distribution of the Hotel proceeds to interested parties, as well as discharge of Receiver Park from her duties and responsibilities. Appeals and cross-appeals were filed by numerous parties, challenging actions taken by the Receiver and approved by the circuit court.[2] On

1. Hawai'i Rules of Appellate Procedure (HRAP) Rule 39(d)(2) (2007) provides in relevant part that "[a] request for fees and costs or necessary expenses must be filed with the appellate clerk ... no later than 14 days after ... the motion for reconsideration has been decided." The order denying the motions for reconsideration of this court's May 9, 2007 consolidated published opinion, filed by defendant-appellee/cross-appellee/cross-appellant International Longshore and Warehouse Union, Local 142, AFL-CIO (ILWU) and party in interest-appellant/cross-appellee/cross-appellant Former Employees of the Hawaiian Waikiki Beach Hotel (the Former Employees), was entered on June 5, 2007.

2. Specifically, the parties to appeal No. 25344 included: (1) plaintiff-appellant/cross-appellee

Hawaii Ventures, LLC [hereinafter, Hawaii Ventures or the Lender]; (2) ILWU (on behalf of 220 members-employees employed by the Hotel); (3) defendants-appellees/cross-appellees/cross-appellants/counterclaimants-appellees Otaka, Inc. (Otaka) and Hawaiian Waikiki Beach, Inc. (HWB); and (4) defendants-appellees/cross-appellees/cross-appellants Takao Building Co., Ltd., formerly known as Takao Building Development Co., Ltd. (Takao Building), K.K. Daini Seven (K.K. Daini), and Yukio Takahashi [hereinafter, the parties named in (3) and (4) are collectively referred to as the Otaka Defendants]. Appeal No. 26820 involved the same parties as in appeal No. 25344, with the addition of the Former Employees (consisted of seventy-eight former bargaining and non-bargaining employees). Intervenor defendant-appellee/cross-appellant/cross-

May 9, 2007, this court issued its consolidated published opinion (the Opinion), "affirm[ing]," in all respect, the circuit court's August 24, 2004 second amended final judgment," except that this court (1) vacated "the awards of fees [to the Receiver and her professionals] reflected in [certain of] the circuit court orders" and remanded the fee orders to the circuit court "for clarification and, if necessary, a redetermination of the amount" and (2) dismissed the "Former Employees' cross-appeal for want of standing." *Hawaii Ventures, LLC v. Otaka, Inc.*, 114 Hawai'i 438, 506–07, 164 P.3d 696, 764–65 (2007).[3]

In her request for fees and costs, Receiver Park asserts that she and her retained professionals are entitled to fees and costs pursuant to HRAP Rule 39, Hawai'i Revised Statutes (HRS) § 607-9 (1993), the circuit court's August 24, 2000 order appointing the Receiver (the appointment order), and general receivership principles, discussed *infra*. Specifically, Receiver Park seeks fees in the amount of $80,935.77 (which amount includes $3,485.02 in general excise tax) and costs in the amount of $372.10 incurred by her and her professionals on appeal for a total request of $81,307.87, to be taxed against the Estate and paid from the $150,000.00 reserve held by the circuit court.[4]

On July 2, 2007, Hawaii Ventures timely filed its memorandum in opposition,[5] arguing that Receiver Park has not met her burden of showing entitlement to fees from the Estate and that, therefore, the request for fees should be denied in its entirety. However, in apparent recognition of the possibility that

appellee Theodore H. Smyth of the Smyth Family Trusts [hereinafter, Trustee Smyth], which owns a substantial portion of the land on which the Hotel sits, was also a party in appeal No. 26820; however, Trustee Smyth's cross-appeal was eventually dismissed.

3. This court also vacated an order granting Hawaii Ventures' motion for deficiency judgment and remanded with instructions: (1) that the circuit court amend its order to include a grant of Hawaii Ventures' request that $394,787.00 (which the special master deemed a receivable from Otaka and HWB to Hawaii Ventures) should be included in the deficiency judgment; and (2) for entry of an amended deficiency judgment that includes the aforementioned amount in favor of Hawaii Ventures and against Otaka and HWB. *Id.*

this court may not agree with its position, Hawaii Ventures alternatively challenges certain services performed by Receiver Park and her professionals as inappropriate for reimbursement from the Estate. Additionally, Hawaii Ventures contends that the request for costs should be denied to the extent that "messenger fees" is not a chargeable item. On July 9, 2007, Receiver Park timely filed her reply to Hawaii Ventures' objections, discussed *infra*.

## II. DISCUSSION

### A. Request for Fees

#### 1. Entitlement to Fees

As previously stated, Receiver Park believes that she and her retained professionals are entitled to appellate fees pursuant to HRAP Rule 39, the appointment order, and general receivership principles. Hawaii Ventures, however, contends that the Receiver and her professionals, have already been "fairly compensated" and, therefore, "should not be awarded any additional amounts from the Estate for the work done in this appeal." Consequently, Hawaii Ventures argues that Receiver Park has not met her burden of showing entitlement to fees on appeal.

■ "Ordinarily, attorneys' fees cannot be awarded as damages or costs unless so provided by statute, stipulation, or agreement." *Blair v. Ing*, 96 Hawai'i 327, 329, 31 P.3d 184, 186 (2001) (citation and internal quotation marks omitted). Indeed, HRAP Rule 39(d) provides that:

4. As stated in the Opinion, the circuit court, in distributing the Estate proceeds, specifically reserved $150,000.00 to be held in an interest-bearing account for further fees and costs. 114 Hawai'i at 455, 164 P.3d at 713.

5. HRAP Rule 39(d)(4) provides in relevant part that "[o]bjections to requests for fees and costs must be filed with the appellate clerk ... within 10 days after service on the party against whom the fees and costs are to be taxed[.]" HRAP Rule 26(c) (2007), however, indicates that, "[w]henever a party is required or permitted to do an act within a prescribed time after service of a paper, and *the paper is served by mail, 2 extra days shall be added to the prescribed period.*" (Emphasis added.) The request for fees and costs was served upon, *inter alia*, Hawaii Ventures *via first class postal mail* on June 19, 2007.

A party who desires an award of attorney's fees and costs shall request them by submitting an itemized and verified bill of fees and costs, together with a statement of authority for each category of items and, where appropriate, copies of invoices, bills, vouchers, and receipts. . . . *A failure to provide authority for the award of attorney's fees and costs or necessary expenses will result in denial of that request.*

(Emphasis added.)

In the appointment order, the circuit court determined that the Receiver and her professionals [6] were entitled to reasonable compensation and out-of-pocket expenses for the performance of their duties, which included

institut[ing], prosecut[ing] and defend[ing], compromis[ing], adjust[ing], interven[ing] in or becom[ing] a party to such actions or proceedings in state or federal court as the Receiver may in the Receiver's reasonable judgment deem necessary or proper for the management, protection, care, maintenance or preservation of the Estate or the carrying out of the Receiver's duties under the terms of this order, including summary possession actions instituted against tenants of the Improvements and Real Property.

*Hawaii Ventures, LLC*, 114 Hawai'i at 460, 164 P.3d at 718 (original brackets omitted). Specifically, the appointment order provided that:

The fees and costs of the Receiver and the Receiver's attorneys, accountants and other professionals, if any, shall be submitted to the [c]ourt for its approval, in the form of either a request(s) for fees upon which a hearing is held and/or a stipulation(s) among all parties. *Such fees and*

*costs shall be deemed to be secured by a superpriority lien against the Estate.*

*Id.* (brackets in original) (emphasis added).

■ However, Hawaii Ventures argues that the appointment order did not explicitly provide for fees *on appeal*, and, thus, fees should not be allowed. In its view, denial of the Receiver's request for fees is

an appropriate result because the Receiver [and her professionals] were already paid in excess of $400,000.00 for their work at the circuit court level. They should not be awarded an additional $80,000.00 for spending significant amounts of time briefing legal issues on appeal that they had handled below.

In response, Receiver Park maintains that "[t]he Receiver and her professionals . . . have *only* been awarded their fees and costs for work done at the circuit court level; they have not yet been awarded fees and costs for work done at the appellate level." Receiver Park points out that she

had to file briefs at the appellate level in order to defend against unfounded allegations mainly made by Hawaii Ventures. This [c]ourt acknowledged that the appointment order expressly authorized Receiver Park to defend such actions or proceedings in state or federal court as she deemed necessary or proper for the protection of the Estate. This [c]ourt also stated that the cost of defending against unfounded allegations may properly be deemed receivership expenses payable out of the estate. Therefore, the Receiver and her professionals should be (and deserve to be) fairly compensated for this necessary work.

(Internal quotation marks, citations to the opinion, and original ellipses and brackets omitted.)

---

**6.** The appointment order authorized Receiver Park to "employ counsel, accountants and other professionals with respect to the Receiver's powers, duties and authority herein." *Hawaii Ventures, LLC*, 114 Hawai'i at 460, 164 P.3d at 718. Specifically,

Receiver Park retained the services of various professionals to assist her in the operation and management of the Hotel, to wit: (1) Ke-ching Ning (from the law firm of Ning, Lilly &

Jones), as the Receiver's general legal counsel; (2) Ronald Tom (of Ron Tom Realty, LLC), as general agent and accounting advisor; (3) Lorraine H. Akiba, as special counsel for environmental issues; (4) Robert S. Katz (of Torkildson, Katz, Fonseca, Moore & Hetherington), as special counsel for labor issues; and (5) Ernest Watari and his accounting firm—PKF Hawaii, LLP (PKF), as consultant and accountant. *Id.* at 478, 164 P.3d at 745.

Preliminarily, we note that Hawaii Ventures' reliance upon *Schreiber v. Ditch Road Investors,* 105 Cal.App.3d 675, 164 Cal.Rptr. 633 (1980), and *Melikian v. Aquila, Ltd.,* 63 Cal.App.4th 1364, 74 Cal.Rptr.2d 739 (1998), in support of its contention that, because the appointment order did not specifically provide for fees on appeal, none should be granted, is misplaced. In *Schreiber,* the appointment order, unlike the one here, did not authorize the receiver to employ counsel or other professionals and did not provide for their compensation. 105 Cal.App.3d at 678, 164 Cal.Rptr. 633. By separate order, more than two years after the issuance of the appointment order, the trial court granted the receiver's application for authority to employ attorneys "with regard to the final accounting, any objections thereto, and any related matters pertaining to the disposition of the proceeds of the receivership estate." *Id.* at 681, 164 Cal.Rptr. 633. Then, over a year later, the trial court, again by separate order, directed the plaintiffs to pay the receiver's attorneys' fees. *Id.* at 679, 164 Cal. Rptr. 633. After successfully defending an appeal taken by one of the creditors, the receiver requested fees incurred on appeal, which the appellate court denied. In so doing, the appellate court reasoned that:

> Pursuant to its authority to order payment of the fees of counsel for the receiver, the court, in [a separate] order ... directed plaintiffs to pay such fees for services of receiver's attorneys rendered through October 30, 1978 (the date of the hearing on objections to receiver's final account). That order is silent regarding allowance of fees to receiver's attorneys for their services in the event of an appeal; *however, the minute order which was the basis for the [separate] order ... stated: "except as herein specifically allowed and ordered, no allowance or award of attorney's fees to any party or to the receiver is allowed or ordered to be paid."*

*Id.* at 681, 164 Cal.Rptr. 633 (emphasis added) (citation omitted). Thus, the court relied upon the parameters set by the separate fee order, not on any omission in the appointment order, as well as on other revealing indicators in the record, including the specific, limiting language of the minute order. Although the court was not disposed to make

an award of fees in that case, it observed that it "may make an award of fees for the services of a receiver's counsel rendered on appeal." *Id.* (citing *People v. Riverside Univ.,* 35 Cal.App.3d 572, 111 Cal.Rptr. 68, 78 (1973) ("[W]e do not intend to preclude the receiver from seeking additional fees for compensable services rendered by him subsequent to the date of the order from which he appeals. In this connection it is to be noted that the cost of defending against an unfounded challenge to a receiver's account is regarded as a necessary expense incurred in the course of his official duties for which he is entitled to reimbursement out of the estate." (Citation omitted.))).

■ Likewise, in *Melikian,* the appellate court did not deny the receiver his requested fees for the services rendered on appeal based upon the fact that the appointment order was silent as to fees on appeal. Rather, the court, although recognizing that it could make an award of fees to the receiver for work done on appeal, declined to do so inasmuch as the receiver had "already been awarded a total fee substantially in excess of an ordinary fee." 63 Cal.App.4th at 1368, 74 Cal.Rptr.2d 739. However, in that case, the only issue on appeal that related to the receiver was the trial court's alleged abuse of discretion in awarding the receiver any fee greater than his hourly rate. *Id.* Thus, the receiver's involvement in the appeal related solely to the defense of his fees. As this court concluded in the Opinion, such fees are not compensable:

> [R]eceivers are not entitled to recover fees and expenses associated with litigation involving the propriety of the fees to be awarded to them because ... the law imposes on a party the duty to pay her own fees and expenses in vindicating her personal interests. It is our understanding that services necessarily involved in preparing fee application[s] ... and defending them ... are not compensable.

114 Hawai'i at 497, 164 P.3d at 755 (internal quotation marks, citation, original brackets, and ellipsis omitted).

■ In this case, the appointment order placed no limitations on what fees and costs (trial and/or appellate) may or may not be

awarded. In fact, as indicated in the circuit court's second amended final judgment, filed on August 24, 2004, the $150,000.00 reserve was set aside specifically "for further fees and costs to the Receiver ... in light of anticipated appeals in this case." Moreover, as stated in the Opinion, "[b]ecause it is not practical for the court to do the physical work in connection with taking the possession of and preserving the property, the court appoints its officer or receiver to act." *Id.* at 458, 164 P.3d at 716 (internal quotation marks, citations, and original brackets omitted). In other words, a receiver is an officer of the court, whose task is to assist the court in managing the estate during the pendency of the foreclosure action. *Id.* at 486, 164 P.3d at 744. Consequently,

> "receivers have a right to compensation for their services and expenses. Even though a receiver may not have increased or prevented a decrease in the value of the collateral, if a receiver reasonably and diligently discharges her duties, she is entitled to compensation." 65 Am.Jur.2d *Receivers* § 219 at 809 (footnotes omitted); *see also Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir.1994) (same). The receiver bears the burden of proof to show entitlement to payment in the amount claimed, 2 Clark, *A Treatise on the Law and Practice of Receivers* § 641(f) at 1097[.]

*Id.* at 489–90, 164 P.3d at 747–48 (original brackets omitted). This court further stated that a receiver

> is generally entitled to compensation from the estate for services rendered in protecting the estate. *See, e.g., Sec. & Exch. Comm'n v. Elliott*, 953 F.2d 1560, 1577 (11th Cir.1992) ("Even though a receiver may not have increased, or prevented a decrease in, the value of the collateral, if a receiver reasonably and diligently discharges her duties, she is entitled to compensation." (Citations omitted.)).

*Id.* at 497, 164 P.3d at 755 (original brackets omitted).

■ Indeed, as one court, in granting the receiver's appellate attorney's fees, recognized,

> [a] receiver is an officer of the court, and is entitled to reasonable compensation, including a reasonable sum for attorney's fees. The award is not made on a "prevailing party" basis, although the results obtained in the representation can be considered in determining the amount of the fee award.

*Southeast Bank, N.A. v. Ingrassia*, 562 So.2d 718, 721 (Fla.Dist.Ct.App.1990). Similarly, a commentator observed that:

> When a receiver appeals a case for the benefit of the creditors, they should bear the expense thereof. The receiver is under no obligation to undertake a suit or action for the benefit of the receivership estate at his own cost. It has been held that[,] when an appeal is taken by the receiver ..., costs on appeal are to be paid out of the funds available to pay the claims of all the general creditors.

2 Ralph Ewing Clark, *A Treatise on the Law and Practice of Receivers* § 640.8 at 1088 (3d ed.1959) (footnotes omitted). Therefore, as long as the receiver's actions were necessary to preserve the receivership property and were authorized by the appointment order, she is entitled to compensation for her work. *See* 65 Am.Jur.2d *Receivers* § 215 at 806 (2001) ("A receiver is, broadly speaking, entitled to allowances from the corpus of the estate for costs incurred by him or her in actions involving the protection or the enforcement of rights of the estate."). Accordingly, Hawaii Ventures' argument that the Receiver should not be awarded fees based upon the appointment order's silence with respect to appellate fees is without merit. We now turn to Hawaii Ventures' specific challenges relating to certain charged items.

## 2. Hawaii Ventures' Specific Challenges

Hawaii Ventures contends that the Receiver and her professionals should not be awarded additional fees from the Estate because "[t]his receivership was not administered as economically as reasonably possible." Hawaii Ventures also argues that fees should not be awarded for (1) briefing the issues raised by ILWU and the Former Employees and (2) defending the Receiver's conduct during the receivership. Lastly, Hawaii Ventures asserts that fees cannot be awarded based on generalized descriptions, and, thus, "the Receiver has not fulfilled her burden of showing entitlement to any amount of fees." We address each contention in turn.

### a. *allegation relating to the administration of the Estate*

██ Hawaii Ventures contends that, because "[t]his receivership was not administered as economically as reasonably possible," compensation is inappropriate. However, as the Receiver points out, we rejected this argument, in large part, in our Opinion.

We determined that the Receiver was correct in making most of her payments, such as her decision to pay the Hotel employees wages earned the week before her appointment and allow the employees to use vacation benefits earned prior to her receivership. 114 Hawaiʻi at 465, 164 P.3d at 723. We also rejected Hawaii Ventures' challenges to the special master's report and concluded that the circuit court properly approved the special master's report. *Id.* at 475–76, 164 P.3d at 733–37. In his report, the special master found that, although (in his view) the Receiver should not have paid certain pre-receivership liabilities, "such disputed payments do not rise to the level of 'bad faith' or 'fraud'" on the part of the Receiver. *Id.* at 477, 164 P.3d at 735 (internal quotation marks and emphasis omitted). Furthermore, this court declined to surcharge the Receiver, as requested by Hawaii Ventures, for her alleged mismanagement of the Estate. In fact, we announced—for the first time—that absolute judicial immunity should apply to court-appointed receivers. *Id.* at 486–87, 164 P.3d at 744–45. Accordingly, Hawaii Ventures' argument is without merit inasmuch as this court has already spoken with regard to the Receiver's conduct in this case.

### b. *briefing issues raised by ILWU and the Former Employees*

██ Hawaii Ventures asserts that:

The Receiver chose to incur fees for the [ILWU's] and [the Former] Employees' issues, and the Receiver should not be awarded such fees against [Hawaii Ventures] and from the Estate for such work:

*Torkildson Fees:* Virtually all of the Torkildson fees of $31,170.73 were incurred in responding to the [ILWU's] appeal and [the Former] Employees' appeal.

*Ning Fees:* Some of [the] Ning fees were similarly incurred in response to the [ILWU's] and [the Former] Employees' appeals.

. . . .

Here, even though time was spent by the attorneys, fees should not be awarded from the Estate for work in connection with the [ILWU's] and [the Former] Employees' issues.

Initially, we note that, on direct appeal, Hawaii Ventures presented a similar argument, *i.e.,* that the Receiver should not be compensated for any work done in relation to the ILWU and the Former Employees. 114 Hawaiʻi at 493, 164 P.3d at 751. However, this court rejected Hawaii Ventures' contention, holding that, "[h]ad she not done [as she did], the Receiver could very well have exposed the Estate to additional liability." *Id.* at 494, 164 P.3d at 752.

In appeal No. 25344, the ILWU primarily asserted that Receiver Park should have paid *all* of the members-employees' vacation and severance benefits due and owing at the date of termination, pursuant to the collective bargaining agreement, which included pre-receivership wages and benefits. *Id.* at 499, 164 P.3d at 757. In appeal No. 26820, the ILWU raised the same challenge as in appeal No. 25344, whereas the Former Employees essentially argued that they should have been granted leave to sue the Receiver for wages and benefits. *Id.* at 504, 164 P.3d at 762. The Receiver submitted briefs explaining why the circuit court correctly denied their claims and why there was no basis for sustaining their cross-appeals. In sum, the Receiver had no choice but to file answering briefs in order to protect the Estate from further liabilities. Had the Receiver not expended her time to respond to the allegations of the parties and defend her decisions made during the receivership, she would have risked exposing the Estate to additional burdens were this court to have found merit in those allegations. Therefore, Hawaii Ventures' contention that Receiver Park and her professionals should not be compensated for work done in connection with the ILWU's and the Former Employees' cross-appeals is unavailing.[7]

---

**7.** Hawaii Ventures also argues that the ILWU

and the Former Employees should bear the bur-

474

### c. *defending the Receiver's conduct*

 Hawaii Ventures, relying upon *Tanner v. Ledington*, 513 So.2d 255, 256 (Fla. Dist.Ct.App.1987), contends that the Receiver and her professionals should not be awarded fees for briefing issues "for the purpose of defending the Receiver's conduct." However, in concluding such argument had no merit, this court noted in the Opinion:

> In *Tanner*, the Florida District Court of Appeals reversed an award of attorney's fees and costs to a receiver because the receiver
>
> > incurred fees and costs in defending her own actions[, *i.e.*, for negligence and breach of fiduciary duty,] as the receiver. Any benefit derived from the legal services performed at [the receiver's] behest accrued to her individually and not to the estate.
>
> *Id.* at 256 (citing *Sundale Assocs., Ltd. v. Moore*, 481 So.2d 1300 (Fla.Dist.Ct.App. 1986)). In turn, the *Sundale* court held that the trial court lacked authority to award the receiver attorney's fees and expenses for the defense of ongoing actions brought by a party against her personally, concluding that the fees did not rise out of the receivership and could not in any way have benefitted the receivership estate. *Id.* at 1301. Here, Hawaii Ventures fails to indicate the action or actions in which the Receiver incurred fees and costs in defending herself. We can only speculate that Hawaii Ventures' argument concerns the Receiver's and her professionals' work

in addressing the parties' objections to her final report. Nonetheless, we indicated earlier that "[t]he cost of defending against unfounded allegations may properly be deemed receivership expenses payable out of the estate." *Ginsberg v. Katz*, [27 Wash.App. 593,] 619 P.2d 995, 998 (1980) (citation omitted). The Special Master did not believe Receiver Park acted in bad faith. Absent from the record is any indication that the circuit court found Receiver Park violated her appointment order, breached her duties, or negligently managed the Estate. In fact, the circuit court approved the Special Master's conclusion of no bad faith and refused to surcharge the Receiver. Accordingly, Hawaii Ventures' argument is without merit.

114 Hawai'i at 498 n. 31, 164 P.3d at 756 n. 31. Likewise, we rejected all of Hawaii Ventures' allegations against the Receiver—including those concerning Receiver Park's mismanagement of the Estate—except for the single issue pertaining to fees incurred in the preparation and defense of the fee applications. Indeed, this court extended the absolute judicial immunity to the Receiver, as a court-appointed officer, and declined to hold her personally liable. *Id.* at 486–87, 164 P.3d at 744–45. As such, Receiver Park's and her professionals' fees incurred in defending "unfounded allegations" should "properly be deemed receivership expenses payable out of the estate." *Ginsberg*, 619 P.2d at 998. Hawaii Ventures' contention, therefore, is without merit.

---

den of the Receiver's and her professionals' fees because the ILWU and the Former Employees "were the cause of most of the time spent by the Receiver's attorneys, and neither the [ILWU] nor the [Former] Employees prevailed on the issues raised in their respective appeals as against the Receiver." We disagree. The ILWU's and the Former Employees' cross-appeals solely concerned the issue of vacation and severance pay allegedly owed to the former Hotel employees. Contrary to Hawaii Ventures' contention, "most of the time" spent by Receiver Park and her professionals were in response to Hawaii Ventures' numerous allegations against the Receiver in her operation of the Hotel, as well as the special master in his review of the Receiver's performances. The majority of the 144–typewritten pages of the Opinion was spent addressing Hawaii Ventures' contentions. For example,

from pages 33 through 60, this court addressed Hawaii Ventures' arguments as they related to the Receiver's final report; from pages 61 to 75, this court addressed Hawaii Ventures' contentions relating to the special master's report; pages 79 to 125 related to the request to surcharge the Receiver and challenges to both the Receiver's and the special master's fees. The ILWU's cross-appeal was limited to pages 125 to 134, and the Former Employees' cross-appeal was addressed from pages 135 to 142. Thus, based upon Hawaii Ventures' own rationale, it should bear most of the Receiver's and her professionals' fees. Nonetheless, as stated above, the $150,000.00 reserve was specifically set aside for the purpose of compensating Receiver Park and her professionals for any additional services rendered after the receivership.

#### d. *generalized descriptions*

Lastly, Hawaii Ventures believes that the invoices attached to the Receiver's request for fees and costs (1) constitute "block billing," *i.e.*, "lumping multiple tasks into a single entry of time," *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1214 (10th Cir.2000), and (2) are replete with general descriptions, *e.g.*, "3/24/2003 Begin drafting answering brief" and "3/28/2003 Continue drafting answering brief, review research." Hawaii Ventures, therefore, maintains that

> it is not possible to determine how much time was spent *for a particular issue or purpose*. Without such a breakdown, the Receiver has not met her burden of showing entitlement to an award, and no fees may be awarded.

(Emphasis added.) More specifically, Hawaii Ventures argues that

> the Receiver cannot be awarded fees for time spent in the appeal researching, briefing and defending the circuit court's award of fees to the Receiver and her professionals [[hereinafter, the defense of fees issue]]. The descriptions reflect generalized charges for working on a brief, without specifying the issues involved. As it is not possible to determine based on the submissions which entries, or how much of each entry, pertained to this purpose, the Receiver has not fulfilled her burden of showing entitlement to any amount of fees.

In retort, Receiver Park argues that Hawaii Ventures' arguments are too general and, therefore, insufficient to oppose her request for fees:

> [Hawaii Ventures] merely complains that it is unclear how much time was spent on

particular issues or tasks, provides some examples of work and time entries for which it believes it should not be charged, but fails to provide a specific calculation of the numeric amount it should not be charged based on each specific entry it believes to be unjustified. Instead, it leaves this up to the [c]ourt to figure out.

■■ The phrase "block billing" "refers to the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 at n. 9 (10th Cir.1998) (internal quotation marks and citation omitted). This practice can make it impossible for the court to determine the reasonableness of the hours spent on each task. As the *Robinson* court stated, "the use of billing practices that camouflage the work a lawyer does naturally and quite correctly raise suspicions about whether all the work claimed was actually accomplished or whether it was necessary." *Id.* at 1284. Another court opined that:

> Unlike vague or generic task entries, block billing entries do not always suffer from inadequate description. *Their infirmity sterns [sic] from the fact that they represent activities lumped together in a single entry with no indication how much time was spent on each task.* In its review of these entries, the [c]ourt was left to approximate the amount of time which should be allocated to each task and cannot determine with a high degree of certainty, as it must, that the billings are reasonable.

*Cobell v. Norton*, 407 F.Supp.2d 140, 159 (D.D.C.2005) (internal quotation marks, citations, original brackets and ellipsis omitted) (emphasis added).[8] Bearing the foregoing

---

8. In demonstrating the use of "block-billing," the *Cobell* court provided the following entries as examples:

> "Review recent decisions including *Pueblo of San Ildefonso v. U.S.*; continue revisions of interim relief; telcoms with Dauphianis, Holt and Peregoy re. same." (10.0 hours) (Gingold—July 31, 1996); "Meet Keith and Rick to prepare for IIM attorney meeting; meet IIM attorneys at NARF; meet Dan Press, Sandy Harris at office; meet Keith for follow-up at NARF[;] calls to Dennis and Dan; [c]alls to Milfred Cleghorn; draft Cleghorn bio for complaint; review old." (11.9 hours) (Peregoy—June 6, 1996); "Draft briefs; finalize research and redo laches section; provide comments for statutes of limitations; confer generally re:

> same w/ BP, DG etc." (11 hours) (Harper—August 19, 1998)[.]

407 F.Supp.2d at 159–60. The court also observed that:

> Courts confronted with petitions containing block time entries have responded in a variety of ways. Some, after concluding they are unable to determine the appropriate amount attributable to the conversations or conferences lacking identifying subject matter, have simply voided the entire time entries billed as block time. Others have undertaken some attempt to adjust the fee award in an effort to reflect an apportionment. At least one court developed the novel approach of disallowing entries of three or more hours that contain four or more tasks or entries of three or more hours that

principle in mind, we address Hawaii Ventures' specific contention that, because the submitted entries are too general, it is not possible to determine how much time was devoted to the defense of fees issue, which Hawaii Ventures contends is not compensable.

▌ Preliminarily, we observe that Hawaii Ventures correctly asserts that the Receiver and her professionals are not entitled to compensation for work performed in relation to the defense of fees issue. We stated in the Opinion that, although a receiver is generally entitled to compensation from the estate for services rendered in protecting the estate,

> several courts have held that receivers are not entitled to recover fees and expenses associated with litigation involving the propriety of the fees to be awarded to them because, as the United States Court of Appeals for the Third Circuit explained, "the law imposes on a party the duty to pay [her] own fees and expenses in vindicating [her] personal interests. . . . It is our understanding that services necessarily involved in preparing [fee] application to the district court and defending them there are not compensable." [*United States v.*] *Larchwood Gardens* [*, Inc.*], 420 F.2d [531,] 534 [ (3d Cir.1970) ]; *In re Imperial '400' Nat'l, Inc.*, 432 F.2d 232, 239 (3d Cir.1970) ("time not legally compensable [includes] that spent in applying for or in defending interim fee awards") (footnote omitted); *Sec. & Exch. Comm'n v. W.L. Moody & Co., Bankers (Unincorporated)*, 374 F.Supp. 465, 490 (S.D.Tex.1974) (holding that a "[r]eceiver's preparation for and attendance at hearings on the fees will not be considered in setting [her] fee"); *In re Polycast Corp.*, 289 F.Supp. 712, 719 (D.Conn.1968) (denying allowance for time charged for preparing the trustee's fee application); *Depositors' Comm. v. Fin. Mgmt. Task Force, Inc.*, 809 P.2d 1095, 1098 (Colo.Ct.App.1991) (concluding that the services rendered in defending the receiver's fee request were of no benefit to the estate—"the services rendered were

for the sole benefit of the fiduciary and its counsel").

114 Hawai'i at 497–98, 164 P.3d at 755–56. Consequently, we remanded the circuit court's orders awarding fees to the Receiver and her professionals for a redetermination inasmuch as the Receiver's "fee applications included fees relating to the preparation and defense of the charged fees, which are not chargeable against the Estate and should not have been considered in awarding fees." *Id.* at 798, 164 P.3d at 756. Likewise, appellate fees incurred by the Receiver and her professionals in defending the awards of fees by the circuit court should not be charged to the Estate. *See also City of Detroit v. Grinnell Corp.*, 560 F.2d 1093 (2d Cir.1977) (holding that efforts by plaintiff's attorneys in defending the fee application in the district court and on appeal benefitted the attorneys, but did not "create, increase, protect, or preserve" the class' fund), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir.2000).

This court has previously stated that "[t]he receiver bears the burden of proof to show entitlement to payment in the amount claimed." *Hawaii Ventures, LLC*, 114 Hawai'i at 490, 164 P.3d at 748 (citation omitted); *cf. In re Attorney's Fees of Mohr*, 97 Hawai'i 1, 5, 32 P.3d 647, 651 (2001) (under HRS § 802-5 (Supp.2006) (relating to compensation for counsel for indigent defendant), "requests for fees should be granted if the court certifies that the requesting attorney has met his or her burden to prove that the fees requested are for hours expended and that the hours expended were 'reasonable' for the services rendered"); *Smothers v. Renander*, 2 Haw.App. 400, 400, 633 P.2d 556, 558 (1981) (under HRS § 607-14, "[a] party seeking attorney's fees has the burden to show that the fees are reasonable and that the fees are for services reasonably and necessarily incurred"). We now examine whether the invoices submitted by Receiver Park include charges relating to the defense of fees issue, which, as stated above, are not compensable.

▌ As previously noted, appeal Nos. 25344 and 26820 were consolidated, and a

---

contain two or more tasks—if one of those tasks of them [sic] could have taken anywhere from a small to a substantial amount of time.

*Id.* at 160 (internal quotation marks and citations omitted).

single opinion was issued by this court on May 9, 2007. In appeal No. 25344, Hawaii Ventures appealed from the circuit court's August 22, 2002 interlocutory order that approved the Receiver's final report, as well as three other related interlocutory orders. *Hawaii Ventures, LLC,* 114 Hawai'i at 448, 164 P.3d at 706. During the pendency of appeal No. 25344, the circuit court resolved all issues in the underlying foreclosure action, resulting in entry of a final judgment. Thus, in appeal No. 26820, Hawaii Ventures appealed from the August 24, 2004 second amended final judgment, challenging, *inter alia,* the circuit court's grant of fees to the Receiver and her professionals. *Id.* In other words, the defense of fees issue was first raised in Hawaii Ventures' opening brief, filed in appeal No. 26820, on *January 24, 2005.* Consequently, we believe that services rendered by the Receiver and her professionals prior to *January 24, 2005* are compensable inasmuch as they do not include the defense of fees issue.

In this case, Receiver Park submitted, along with her request for fees and costs, invoices prepared by the law firms of Ning, Lilly & Jones and Torkildson, Katz, Fonseca, Moore & Hetherington, as well as those prepared by the Receiver herself. Specifically, of the requested $80,935.77, the law firm of Ning, Lilly & Jones seeks reimbursement of $49,235.06; the law firm of Torkildson, Katz, Fonseca, Moore & Hetherington seeks $31,170.37; and Receiver Park seeks $530.34. The invoices attached to the Receiver's request for fees and costs revealed that pre-January 24, 2005 charges totaled (1) *$12,558.63* for Ning, Lilly & Jones, and (2) *$9,884.78* for Torkildson, Katz, Fonseca, Moore & Hetherington. Receiver Park's invoice does not contain any entry that predated January 24, 2005.

▆▆ With respect to post-January 24, 2005 entries, a review of the Ning, Lilly & Jones' invoice demonstrates the possibility that charges relating to the defense of fees issue could have been included in the entries. We further observe that certain entries in the Ning, Lilly & Jones' invoice could arguably be deemed "block billing." For example:

| DATE | NAME | DESCRIPTION | UNIT | PRICE | VALUE |
|---|---|---|---|---|---|
| 02/22/05 | JDR | Conferences with Kathy regarding changing/confirming filing deadline; e-mail/phone call to Jeff Harris regarding filing deadlines and his participation; work on side-by-side comparison chart; discussion with Val Kato regarding organization | 5.9 | $125.00 | $737.50 |
| 03/11/05 | TSK | Work on brief (review through draft of brief and review pleadings for citations to the record); conference Jill Raznov regarding payment issue and review files regarding objection to 8/01 payments and order regarding same and conference with Jill Raznov regarding findings | 5.2 | $ 75.00 | $390.00 |
| 03/22/05 | JDR | Read Ke–Ching Ning's corrections to draft of answering brief; redraft document; conference with Ke–Ching Ning regarding standard of review and "tone" of answering brief; conference with Kathy V. regarding briefs in Forgay and pending appeals cases to give Ke–Ching Ning for review | 3.1 | $125.00 | $387.50 |
| 03/23/05 | JDR | Conference with Kathy V regarding briefs to give Ke-Ching Ning for review in pending and Forgay appeals cases and differentiating the two appeals; continue to redraft answering brief; conference with Ke–Ching Ning regarding ILWU's and the Former Employees' briefs | 4.5 | $125.00 | $562.50 |

| 04/01/05 | JDR | Research case law cited in our brief; re-write standard of review; work on 4th draft of answering brief; send to Patricia Park; research HI cases cited in Hawaii Ventures' brief | 7.6 | $125.00 | $950.00 |
|---|---|---|---|---|---|

In addition to the aforementioned defect, Ning, Lilly & Jones provides little or no reference to the substance of the work claimed. Entries such as: "Begin drafting answering brief"; "Read appeal briefs and our draft responses"; "Research and revise answering brief; conference with Ronald Ton regarding answering brief"; "Meeting with P. Park regarding answering brief" are so vaguely generic that it is impossible to distinguish, in light of the circumstances in this case, between compensable and non-compensable claims. Because the defense of fees issue was only one of the many issues addressed by Receiver Park in retort to Hawaii Ventures' appeal, we cannot effectively determine, without a further breakdown of the entries, the amount of time attributable to the non-compensable issue. Such determination is necessary in order to calculate the amount of disallowed versus allowable fees for the law firm of Ning, Lilly & Jones. Accordingly, the Receiver fails to carry her burden of proving Ning, Lilly & Jones' entitlement to the post-January 24, 2005 fees.

Similarly, a review of Receiver Park's invoice reveals that three of the four entries (e.g., "read drafts of briefs"; "telephone call to Ms. Raznov on brief"; and "email to Mr. Kamida on typos in brief") are not sufficiently descriptive such that an apportionment can be made as to the amount of time expended on issues other than the defense of fees issue. In fact, the fourth entry appears to charge for work relating to the Receiver's defense of fees issue—"conference with Steve Jones and Ms. Raznov on fee remand[, as a result of this court's Opinion]." Consequently, we are compelled to conclude that the Receiver fails to carry her burden of proving her entitlement to the requested fees.

By contrast, the majority of the post-January 24, 2005 entries in the invoices of Tork-ildson, Katz, Fonseca, Moore & Hetherington contains specific descriptions, identifying the particular issue researched or worked on. The entries contained in these invoices sufficiently documented the hours devoted to the various tasks; for example, the April 15, 2005 invoice reveals the following entries:

| DATE | INITIAL | DESCRIPTION | HOURS |
|---|---|---|---|
| 03/10/05 | CAK | Review Opening Briefs of Hawaii Ventures LLC, Otaka, Inc., ILWU Local 142, and Employees (4.00); research on payment of vacation and severance by receiver (2.0) | 6.0 |
| 03/11/05 | CAK | Research on ERISA preemption of ILWU's and Former Employees' claims for vacation and severance (2.0); research on proof required and standard of review of motion for leave to sue Receiver (1.75) | 3.75 |
| 03/14/05 | CAK | Review Opening briefs of ILWU Local 142 and Former Employees (2.50); research on cases cited by ILWU (1.50); review documents and record on appeal in preparation for drafting Answering Brief (2.25) | 6.25 |
| 03/15/05 | CAK | Outline of ILWU's and Former Employees' points on appeals and general responses (1.50); research (including LEXIS computerized research) on cases discussing liability of receiver after discharge and whether appeal is mooted by change in circumstances or distribution of funds from receivership estate (4.0); draft letter to Ke–Ching Ning regarding appeals (1.25) | 6.75 |
| 03/29/05 | CAK | Research (including LEXIS research) on standard of review for stay of appeals (1.0); research (including LEXIS research) on application of FRCP 62 to appeals of receivership orders (2.0); additional research (including LEXIS research) on LMRA Section 301 preemption as applied to employee claims for unpaid vacation or severance (1.25); draft Answering Brief to ILWU's Opening Brief (2.75) | 7.00 |

As such, a reasonably accurate determination can be made regarding allowable fees, *i.e.*, those *not* attributable to the defense of fees issue. The invoices reveal that most of the post-January 24, 2005 work (*i.e.*, $16,768.54) rendered by Torkildson, Katz, Fonseca, Moore & Hetherington was related to the ILWU's and/or the Former Employees' cross-appeals. Consequently, we hold that Torkildson, Katz, Fonseca, Moore & Hetherington be awarded an additional $16,768.54 in fees for post-January 24, 2005 services.

In light of the aforementioned discussion, we award: (1) Ning, Lilly & Jones fees in the amount of $12,558.63 for pre-January 24, 2005 work; and (2) Torkildson, Katz, Fonseca, Moore & Hetherington fees in the amount of $26,653.32 ($9,884.78 for pre-January 24, 2005 fees + $16,768.54 for post-January 24, 2005 fees). We, however, decline to grant Receiver Park's request for her own fees.

**B.** *Request for Costs*

■ The Receiver seeks $372.10 for costs incurred by the law firm of Ning, Lilly & Jones on appeal, which included:

| ITEM | CHARGES |
| --- | --- |
| Printing/copying of brief/appendices (2696 pages @ $.10/page plus 4.712% GET) 9 | $282.30 |
| Messenger services (20 delivery stops × $4.49 each) | $ 89.80 |
| **TOTAL** | **$372.10** |

Hawaii Ventures, however, argues that "$89.80 in messenger fees are part of the firm's overhead costs and are not chargeable." Receiver Park does not address Hawaii Ventures' contention in her reply memorandum.

HRAP Rule 39(c) defines costs in the appellate court as:

(1) the cost of the original and one copy of the reporter's transcripts if necessary for the determination of the appeal; (2) the premiums paid for supersedeas bonds or other bonds to preserve rights pending appeal; (3) the fee for filing the appeal; (4) the cost of printing or otherwise producing necessary copies of briefs and appendices, provided that copying costs shall not exceed 20 [cents] per page; (5) necessary

postage, costs of facsimiles, interstate travel, long distance telephone charges; and (6) *any other costs authorized by statute or rule.*

(Emphasis added.) Although the plain language of HRAP Rule 39(c) expressly restricts reimbursable costs to specific items, it also indicates that costs may include those "authorized by *statute* or rule." (Emphasis added.) HRS § 607-9 provides that:

No other costs of court shall be charged in any court in addition to those prescribed in this chapter in any suit, action, or other proceeding, except as otherwise provided by law.

*All actual disbursements, including but not limited to,* intrastate travel expenses for witnesses and counsel, expenses for deposition transcript originals and copies, and *other incidental expenses,* including copying costs, intrastate long distance telephone charges, and postage, *sworn to by an attorney or a party, and deemed reasonable by the court, may be allowed in taxation of costs.* In determining whether and what costs should be taxed, the court may consider the equities of the situation.

(Emphases added.) However, in *Kikuchi v. Brown,* 110 Hawai'i 204, 130 P.3d 1069 (App. 2006), the Intermediate Court of Appeals (ICA) expressed that

messenger fees for the routine task of delivering [a party]'s documents to court[ ] is categorically outside the concept of "costs."

Generally[,] overhead office expenses, namely expenses that an attorney regularly incurs regardless of specific litigation, including telephone charges, in-house delivery charges, in-house photocopying, check processing, newspaper subscriptions, and in-house paralegal and secretarial assistance, are not recoverable as costs of litigation. Such overhead refers mainly to fixed expenses which are, therefore, already reflected in an attorney's hourly rate. As a result, they should not be apportioned to any single cause of action so as to constitute an additional charge.

---

9. Pursuant to the January 15, 2002 order granting Receiver Park's interim fee application, the circuit court implemented a guideline, which included that only "$.10 is allowed per page for in-house copying."

*Id.* at 212, 130 P.3d at 1077 (citations omitted). The ICA further observed that, "[o]nly when such expenses are extraordinary in terms of volume and costs, *e.g.,* in class action suits requiring extensive mailing or voluminous copying, should they be recoverable." *Id.* at 213, 130 P.3d at 1078 (citation omitted). Consequently, the ICA announced that it

view[ed] the function of delivering documents, as a general proposition, akin to the other tasks performed by support staff. We are aware that some firms hire support staff whose responsibilities include the delivery and retrieval of documents while other firms subscribe to an outside service to perform this function. The fact that, by out-sourcing this function, it is possible to identify or allocate the cost attributable to a particular case does not change the nature of the task. The filing and delivery of legal documents is essential to the provision of legal services and must be considered a part of the delivery of those services. Thus, except in the rare circumstance where the need in a particular case is extraordinary in its volume or nature, the cost of this function ... is treated as overhead.

*Id.; see also Buscher v. Boning,* 114 Hawai'i 202, 222–23, 159 P.3d 814, 834–35 (2007) (awarding messenger service costs because plaintiff's attorneys were on O'ahu, while the case was being tried in the third circuit (Kona Division) on the island of Hawai'i).

Inasmuch as this case does not fall within the "rare circumstance" that would render messenger services chargeable as costs, Receiver Park is not entitled to reimbursement of $89.80 in messenger fees. However, in light of the fact that Hawaii Ventures makes no other objections with regard to the remainder of the request for costs, the Receiver should be awarded those costs, totaling $282.30 for photocopying services. *Wong v. Takeuchi,* 88 Hawai'i 46, 53, 961 P.2d 611, 618 (1998) ("Unless there is a specific objection to an expense item, the court ordinarily should approve the item." (Citation and internal quotation marks omitted.)); *Blair v. Ing,* 96 Hawai'i 327, 335, 31 P.3d 184, 192 (2001) (stating that, "[i]n the absence of opposition [regarding the reasonableness of costs], we presume the ... costs were reasonable").

### III. *CONCLUSION*

Based on the foregoing, we grant in part and deny in part Receiver Park's request for fees and costs, filed on June 19, 2007. Specifically, Receiver Park's request for fees is denied in all respects, except that (1) the law firm of Ning, Lilly & Jones is awarded fees in the amount of $12,558.63 and (2) the law firm of Torkildson, Katz, Fonseca, Moore & Hetherington is awarded fees in the amount of $26,653.32. The Receiver's request for costs is granted in part in the amount of $282.30.