Filed 2/18/16  Builders Bank v. Carbon Beach Partners CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BUILDERS BANK,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CARBON BEACH PARTNERS, LLC,<br><br>    Defendant;<br><br>ROBB EVANS & ASSOCIATES, LLC,<br><br>    Receiver and Respondent. | B259539<br><br>(Los Angeles County<br>Super. Ct. No. BC398979) |

APPEAL from an order of the Superior Court of Los Angeles County. Joanne B. O'Donnell, Judge.  Affirmed.

Law Offices of Richard D. Grossman and Richard D. Grossman Plaintiff and Appellant.

Mirman, Bubman & Nahmias, Alan M. Mirman, Michal E. Bubman and Scott C. Timpe for Defendant and Respondent.

_____

Builders Bank (Builders) appeals from an order granting receiver fees and expenses to Robb Evans & Associates, LLC (Receiver). We find no error and affirm.

## FACTS

*Builders' Complaint; Appointment of Receiver*

Builders filed a complaint alleging that Carbon Beach Partners LLC (Carbon Beach) defaulted on construction loans pertaining to a project to build eight luxury villa condominiums (project) on property located on the Pacific Coast Highway in Malibu, California (property). The principal amount owing was $13,344,023.06. Builders filed an ex parte application for appointment of a receiver. On October 2, 2008, Receiver was appointed.

*Receiver's Report of Activities Between October 2, 2008, and October 24, 2008*

In Receiver's first report of its activities, it represented that Receiver unsuccessfully tried to sell the promissory notes secured by the property. Builders agreed to work with Receiver on a proposal to complete the project. Subject to trial court approval, Builders indicated a willingness to provide additional funding for the remaining construction. Builders estimated that the project was 90 percent complete. Receiver anticipated it would take three months to complete the project, at which time the units could be marketed.

*Receiver's Management of the Property and Project; Receiver's Certificates; Funding Shortfall*

With two receiver's certificates funded by Builders, Receiver paid for property taxes and employed four subcontractors to complete water and sewer installation, electrical work, fire protection systems, and to repair the nonoperating phone lines. Receiver contracted with Tribeca Security for 24-hour security at the property. In early 2009, Receiver met Sam Karp of Kachay Co., Inc. (Kachay) and learned that Builders wanted Kachay to complete the project. Builders eventually issued third and fourth receiver's certificates to pay property taxes and fund various items of work to be done on the project. A fifth receiver's certificate was issued to cover $118,977.59 in Receiver's

2

fees, expenses, and administrative costs incurred from October 2008 through January 2009. Receiver agreed to discount its fee in the approximate amount of $21,000.

Kachay became the project's new general contractor, and work on the project commenced for the next several months with a work force provided by Landscape Construction Solutions. Architectural services were provided by KTGY Group, Inc. (KTGY), and engineering services were provided by Haaland Group. Later, with the approval of Receiver and Builders, Kachay was given the authorization to repair damage cause by rain and rear slope slippage. Receiver advised Builders that to continue with the expanded scope of work, it would need additional funding to cover the repair work, architectural and engineering services, receivership fees, utilities, security expenses, and premiums for liability insurance. Builders agreed to and approved the additional expenditures. Kachay, KTGY and Haaland Group continued performing the approved tasks.

Builders failed to request that the trial court approve a sixth receiver's certificate, which caused Receiver to hire Alan Mirman (Mirman) of Mirman & Bubman, LLP to communicate with Builders. Prompted by Mirman, Builders advised that it was unable to fund an additional receiver's certificate.

In September 2009, Receiver notified all interested persons, stating, inter alia, "Until further notice from the Receiver's office, the [p]arties and their officers or representatives may not direct the Receiver's contractor to begin, continue or restart any work on the [project]. The parties may not incur or direct any person or entity, including the Receiver's contractor, to incur any liability, obligation, or commitment for or on behalf of the Receiver or the Receivership Estate."

In October 2009, Mirman prepared the necessary documents in anticipation of filing an ex parte application for approval of an additional receiver's certificate to remedy the funding shortfall.

***Carbon Beach's Notice of Bankruptcy***

Carbon Beach filed notice that on November 3, 2009, it petitioned for bankruptcy under Chapter 11 of Title 11 of the United States Code. As a result, Receiver was barred

3

by the automatic stay from proceeding with its ex parte application, which it had scheduled for November 4, 2009.

### Relief from Automatic Stay to File State Court Motions; Receiver's State Court Motions

Receiver filed a motion for relief from the automatic stay for the purpose of filing motions for a nunc pro tunc order authorizing Receiver to retain counsel; discharge of Receiver; approval of Receiver's final account; exoneration of bonds; and an order directing Builders to pay Receiver's administrative expenses. The bankruptcy court granted the requested relief.

Receiver filed its various motions in state court and scheduled them to be heard on April 19, 2010. It requested $158,676.75 in fees and expenses, including $76,856.60 in receivership fees and $23,634 in attorney fees. Also, Receiver requested an order that Builders establish a blocked account with $375,882.99 to pay the claims of third parties.

The state court motions were continued several times.

### Removal to Bankruptcy Court

Before the continued hearing date, Carbon Beach filed a notice of removal of Builder's action to the bankruptcy court. As a result, Receiver's state court motions were taken off calendar.

### Proceedings in Bankruptcy Court

Carbon Beach filed a complaint in the bankruptcy court naming Builders and Receiver as defendants, thereby initiating an adversary proceeding.

### Foreclosure

Builders obtained relief from the automatic stay on March 8, 2011, and foreclosed on the property.

### End of the Bankruptcy Case and Adversary Proceeding

In 2013, Carbon Beach settled with Receiver and Builders. The bankruptcy court approved the settlement agreements and dismissed the bankruptcy case. It dismissed the adversary proceeding with prejudice.

*Further Proceedings in State Court and Bankruptcy Court*

On September 4, 2013, Receiver filed a motion for discharge of Receiver, approval of final account, and an order directing Builders to pay third party claims and Receiver's administrative expenses (final account motions). The final account motions were set for September 26, 2013, in Department 12. Builders filed a motion to continue the hearing date on the final account motions so it would have more time to file objections. It requested leave to conduct discovery. Judge Barbara A. Meiers, who was in Department 12, denied Builder's request to conduct discovery but nonetheless continued the hearing date.

Builders filed objections, arguing: the trial court lacked jurisdiction over the case because it was never remanded from the bankruptcy court; "there [was] nothing left for [the court] to do" because Receiver presented his final accounting to the bankruptcy court and was awarded an administrative claim; Receiver was not entitled to equitable relief because it obtained legal relief in bankruptcy court; and the request that Builders pay third party claims was defective because Receiver lacked standing to assert those claims, such a request was not supported by law or equity, and the request was barred by the doctrine of judicial estoppel.

On October 23, 2013, Judge Meiers announced her tentative ruling to grant the final account motions and then took the matter under submission to review the amounts requested as fees for Receiver and his counsel. Later that same day, Judge Meier issued a notice of "no ruling," stating: "Department 12 apologizes to the parties. Department 12 kept some receivership cases after ceasing to be the judge generally [handling] rent and profit receiverships where Judge Meiers had made the original appointment of the receiver. [¶] The court noted only after the 10/23 arguments that this was not the case in the Builders Bank case. Accordingly, the receiver is to renotice his motion for hearing in Department 82. It is ordered off calendar in Department 12."[1] Receiver filed a motion

---

[1]  Receiver was appointed by Commissioner Bruce Mitchell in Department 59.

for reconsideration in Department 12 and asked Judge Meiers to rule on the final account motions. The motion was unsuccessful.

The final account motions ended up in Department 86 in front of Judge Joanne B. O'Donnell. She indicated that she lacked jurisdiction to rule. Consequently, she set an order to show cause why she should not stay further proceedings pending a remand order from the bankruptcy court.

Receiver went to bankruptcy court, reopened the bankruptcy case and obtained an order remanding the adversary proceeding to the state court.

The final account motions were set to be heard on August 1, 2014. Builders filed objections in which it requested "an evidentiary hearing during which [it] can compel the Receiver to explain what he did and the circumstances creating the shortfall." Also, Builders objected to paying Receiver's fees and its attorney fees. The matter was taken off calendar because Judge O'Donnell did not have a certified copy of the remand order from the bankruptcy court.

In September 2014, Judge O'Donnell heard the final account motions, which were supported by supplemental papers seeking actual and anticipated fees and expenses incurred after June 30, 2013. The motions were granted. In her ensuing order, Judge O'Donnell ordered Builders to pay $152,666.41 in receivership fees, $145,383.87 in attorney fees, and $185,200.22 to cover third party claims.

This timely appeal followed.

## DISCUSSION

### I. The Award of Receivership Fees and Expenses.

"A receiver is an agent and officer of the court, and is under the control and supervision of the court. [Citations.]" (*City of Chula Vista v. Gutierrez* (2012) 207 Cal.App.4th 681, 685 (*Chula Vista*).) It is "entitled to compensation for [its] own services and the services performed by [its] attorneys. [Citation.]" (*Ibid.*) Court review "'of the account of a receiver is conducted in a spirit of equity, assuming the receiver to be honest until the contrary appears, and from the standpoint of benefit or injury to the estate rather than of strict and technical adherence to form.'" (*People v.*

6

*Riverside University* (1973) 35 Cal.App.3d 572, 586 (*Riverside University*).) The "cost of defending against an unfounded challenge to a receiver's account is regarded as a necessary expense incurred in the course of his official duties for which he is entitled to reimbursement out of the estate. [Citation.]" (*Id*. at p. 587.) "The payment of the receiver's attorney's fees for defending an action against the receiver, or for defending an appeal, are within the discretion of the trial and appellate courts, respectively." (12 Miller & Starr, Cal. Real Estate (4th ed. 2015) § 41.17, pp. 41-43–41-44.) An order fixing a receiver's fees will not be disturbed absent an abuse of discretion. (*Melikian v. Aquila, Ltd.* (1998) 63 Cal.App.4th 1364, 1368.)

A receiver's fees and expenses are usually paid out of the receivership estate, but sometimes the receivership estate does not have sufficient assets. In that scenario, trial courts have "broad discretion in determining who is to pay the expenses of a receivership, and the [trial] court's determination must be upheld in the absence of a clear showing of an abuse of discretion. [Citations.]" (*Chula Vista*, *supra*, 207 Cal.App.4th at p. 686.) "In considering the appropriate source for the compensation, a relevant factor is whether the party to be charged obtained a benefit from the receiver's services. [Citation.]" (*Ibid.*) "The party seeking appointment of a receiver may be held responsible for payment of the receiver's fees if amounts in the receivership estate are insufficient." (12 Miller & Starr, Cal. Real Estate (4th ed. 2015) § 41.22, p. 41-54.)

Builders offers two arguments as to why it should not have been ordered to pay all the fees and expenses requested by Receiver.

A.  Argument No. 1.

According to Builders:  "The vast majority of the amount claimed by the Receiver for fees and expenses was incurred after the receivership was ended by a bankruptcy and consists largely of fees accumulated over several years by the Receiver in pursuing unsuccessful and jurisdictionally-barred motions to have its Final Accounting approved by the trial court, despite clear authority that such motions should not have been brought unless there had been a remand from the bankruptcy court[.]"  We glean from this

statement that Builders is challenging receivership fees and expenses arising from certain motions filed by Receiver.

To properly frame the issue, Builders was required to identify the specific fees and expenses that it finds objectionable. It did not meet this obligation.

Presumably, Builders objects to any and all receivership fees and expenses related to the final account motions. What amounts should be disallowed? To discern the answer, we would have to comb through the record without assistance from Builders. We decline. Builders has waived its argument. (*Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1050.) Regardless, the inescapable fact is that the final account motions were eventually heard and granted, which means the jurisdictional bar delayed Receiver's relief but did not defeat it.

To the degree Builders obliquely refers to litigation other than the final account motions, we do not know what other legal filings or arguments it contends were jurisdictionally barred. That ends our analysis. Simply put, "[i]t is not our responsibility to develop an appellant's argument." (*Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190, 1206, fn. 11.)

B. Argument No. 2.

Builders contends that Receiver is entitled to compensation for none or only some of the fees and expenses incurred after Carbon Beach filed for bankruptcy on November 3, 2009. This leads Builders to state, "After that date, the only tasks completed by the Receiver were the turn over of the subject property, followed by the Receiver defending himself in the bankruptcy court from charges of negligence and breach of fiduciary duty and attempting to get himself paid." Then Builders "submits that [Judge O'Donnell] abused [her] discretion by failing to scrutinize the Receiver's request for fees and costs for any value to [Builders] (or the receivership estate). Instead, [Judge O'Donnell] adopted an all or nothing approach—'You asked for the receivership[, so] you have to suffer the consequences, whether it was of value to you or not[.]'. . . . Essentially, [she] seemed prepared to have the Bank pay for anything the Receiver did—whether it was defending himself from alleged wrongdoing, or

8

erroneously pursuing a jurisdictionally-barred path to payment, because the court construed those things to be 'incident' to the receivership."

The fees and expenses that Builders questions are any that may have been awarded with respect to Receiver's filing of the final account motions; the motion to reconsider the transfer from Judge Meier to Judge O'Donnell; efforts to reopen the bankruptcy case to obtain a remand order; and the rescheduling of the final account motions due to Receiver's failure to provide Judge O'Donnell with the remand order. Builders states: "None of the above was [its] fault, nor were any of these errors piled on errors 'beneficial' in any way to [it]. Yet the trial court ordered [Builders] to pay for every penny incurred by the Receiver while he was litigating down the various cul-de-sacs described above. There is no question but that if [Builders] were an ordinary client and presented with a bill for the Receiver's or his attorney's 'services', [Builders] would have ample reason not to pay it. [Builders] contends that the rubric 'Receiver' should not somehow entitle him to charge for meritless, worthless or futile 'work.' [¶] In short, while the trial court undoubtedly has broad discretion to award fees to a receiver, that discretion must be bounded by applicable principles of law. . . . No one should have to pay for another's mistakes, especially when a cardinal consideration is whether the person to be charged benefitted[.]"

In our view, this argument is not sufficiently developed to succeed. Builders has not established what, if anything, it was charged with paying with respect to the motions and actions referred to above, nor has it explained why or on what legal theory particular amounts should have been disallowed. Consequently, Builders has not demonstrated a clear abuse of discretion.

In any event, regarding the final account motions, it must be recognized that Receiver was required by law to file them. (Cal. Rules of Court, rule 3.1184.) Given that filing them was part of Receiver's official duties, their preparation and filing was a necessary expense, and Receiver and his attorney were entitled to be compensated (*Macmorris Sales Corp. v. Kozak* (1967) 249 Cal.App.2d 998, 1005 (*Macmorris*)) absent a showing by Builders otherwise.

9

It appears that Builders contends that it should pay only for legal and receiver services it deems necessary, successful and perfectly efficient. We cannot find fault, however, with Judge O'Donnell's award of fees despite some minor detours in the case. Even the most experienced attorneys must grapple with unanticipated obstacles during litigation, and sometimes it is a sound strategy to file a motion that may have less than a 100 percent chance of success. No case is the same, no lawyer has a crystal ball. So, if a receiver's lawyer acted in good faith, a trial court is well within its discretion to decide the value of the legal services as a whole.

Builders complains that it did not receive a benefit from Receiver's services. That is only one factor to consider, and it is not dispositive. Another factor is the identity of the person who requested the receiver. Here, that was Builders. If benefit was required, the record easily establishes it. Receiver managed the property (which secured Carbon Beach's debt), paid taxes and presided over substantial repairs, all of which added or retained value prior to the foreclosure sale.

Receiver assumes that Builders challenges any fees associated with Receiver defending itself in the adversary proceeding in Carbon Beach's bankruptcy case. On this point, Builders' opening brief is unclear. For that reason, it bears mention that in one of his declarations below, Mirman declared that Receiver's legal fees in the adversary proceeding were paid by an insurer.[2] Builders does not dispute this. Because the record does not establish that Builders paid any part of Receiver's defense, those legal fees are not at issue on appeal.

---

[2]     $775 was not paid by insurance. Mirman never demanded payment for that amount.

## II.  Denial of Discovery and an Evidentiary Hearing.

Judge Meier refused Builders' request for discovery, and Judge O'Donnell refused its request for an evidentiary hearing.  According to Builders, each ruling was an abuse of discretion dictating reversal.

The sole authority for Builders' position is *Macmorris*, which stated:  "It is of course an indispensable part of the receiver's duties to file an accounting and submit himself to inquiry and attack by those beneficially interested in the estate."  (*Macmorris*, *supra*, 249 Cal.App.2d at p. 1005.)  Based on *Macmorris*, Builders states, "The clear import of this language is that after filing his Final Accounting, a receiver either has to submit to a deposition or appear for an evidentiary hearing on the date for presentation of the Final Accounting."

The quote from *Macmorris* is unhelpful to our analysis because it did not decide whether a party objecting to a receiver's final report was entitled to discovery or an evidentiary hearing, and a case is authority only for a proposition that was considered and decided.  (*In re Chavez* (2003) 30 Cal.4th 643, 656.)[3]  In our view, Builders waived its argument by failing to cite applicable law.

Builders' argument fails for additional reasons.

Receiverships are governed by statute and rules of court.  Code of Civil Procedure section 568 provides:  "The receiver has, under the control of the court, power to bring and defend actions in his own name, as receiver; to take and keep possession of the property, to receive rents, collect debts, to compound for and compromise the same, to make transfers, and generally to do such acts respecting the property as the court may authorize."  California Rules of Court, rule 3.1175 et seq. provide, inter alia, that a receiver must file an inventory within 30 days after appointment, provide monthly reports to the parties, and file a final account and report.  Regarding procedure, California Rules

---

[3]      *Macmorris* merely held that when a receiver hires a lawyer for a trial contesting a final account and report, and when the receiver prevails, a trial court acts within its discretion to award the receiver legal fees for his or her defense. (*Macmorris*, *supra*, 249 Cal.App.2d at p. 1005.)

of Court, rule 3.1183 provides: "(a) Interim fees . . . are subject to final review and approval by the court. The court retains jurisdiction to award a greater or lesser amount as the full, fair, and final value of the services received. [¶] (b) . . . Unless good cause is shown, objections to a receiver's interim report and accounting must be made within 10 days of notice of the report and accounting, must be specific, and must be delivered to the receiver and all parties entitled to service of the interim report and accounting." The rules make no provision for objections to the final account and report, and they do not provide for discovery or evidentiary hearings.

Case law establishes that "in the area of civil discovery, the judiciary has no power to create or sanction types or methods of discovery not based on a reasonable interpretation of statutory provisions." (*Holm v. Superior Court* (1986) 187 Cal.App.3d 1241, 1247.) On the other hand, every court has the power to "control in the furtherance of justice, the conduct of its ministerial officers," and to compel persons to testify. (Code Civ. Proc., § 128, subd. (a)(5) & (6).) Thus, it is arguable a trial court has inherent authority to order a receiver, who is an agent of the trial court, to provide discovery or testify at a contested hearing.

Assuming for the sake of argument that the bench officers could have ordered Receiver to provide discovery or testify with respect to the final account motions, the point is moot. Absent a showing of good cause, Builders was required to file objections to the monthly reports (if any) in order to preserve those objections. To make a case for discovery or an evidentiary hearing, Builders had to (a) show good cause to file late objections to matters contained in the monthly reports, or (b) establish that no monthly reports were served and therefore its objections were timely because they were being asserted at the first opportunity. Builders did not establish either (a) or (b). As a result, we perceive no abuse of discretion.

Regardless, the record is inadequate for meaningful review because Builders did not provide a reporters' transcript, and the clerk's transcript is silent with respect to why Judge Meier denied discovery and Judge O'Donnell denied an evidentiary hearing. (*Mountain Lion Coalition v. Fish & Game Com.* (1989) 214 Cal.App.3d 1043, 1051.) In

12

the absence of a reporter's transcript, we are left uninformed as to whether discovery and an evidentiary hearing were denied due to lateness of the requests, lack of authority for the requests, the failure to comply with the California Rules of Court, or an abandonment of the requests. What remains is the presumption that Judge Meier and Judge O'Donnell ruled within the bounds of their discretion. (*Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 153–154.)

## III. Third Party Claims.

Builders contends that it should not have to pay third party claims because Receiver was not the real party in interest and the claims were time barred.

A. Real Party In Interest.

Code of Civil Procedure section 367 provides: "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." Based on this statute, Builders suggests that Receiver cannot prosecute an action on any third party claims it does not own. That may be true, but the point is a sidetrack that has nothing to do with the instant case. Receiver was not prosecuting an action below. Rather, it was representing a receivership estate under Code of Civil Procedure section 568 and the authority of the trial court. To understand what the Receiver could and could not do, we turn to receivership law.

"Ordinarily a receiver is not individually liable for acts reasonably carried out within the authorized scope of the receiver's appointment. Such liabilities, if any, are chargeable to the receivership estate." (12 Miller & Starr, Cal. Real Estate (4th ed. 2015) § 41:18, p. 41-45.) In some instances, the "parties [to the action] may be required to satisfy the outstanding expenses." (*Id*. at p. 41-46.) While a receiver "functions as the owner, he is also the representative of the court and holds the property 'for the benefit of . . . creditors and others in whose favor claims might exist or arise against the estate in receivership.' [Citation.]" (*Vitug v. Griffin* (1989) 214 Cal.App.3d 488, 496.) "It stands to reason that all creditors, whether their status is contingent or fixed, have a right to be heard concerning distribution and apportionment of receivership funds. 'Though generally a receiver stands indifferent as between creditors, he is bound to see to it that

13

each has an opportunity to enforce his claim and to give them reasonable aid in doing so [citations][,] and if with knowledge of a claim he nonetheless pays out all of the receivership funds[,] he may incur personal responsibility for the payment of such a claim.  [Citations.]'  [Citation.]"  (*Ibid.*)

In the final account motions, Receiver submitted evidence that the "Receivership Estate owes $185,200 to 23 third-party creditors, with the largest amounts owed to Kachay (the replacement general contractor) ($20,436.76) and its workforce provided by Landscape Construction Solutions ($35,080); KTGY (the architect) ($64,150.11 ); Tribeca International Protective Services, the firm providing security service since the inception of the Receivership ($33,574.40); and to Haaland Group, the engineer assisting the contractor and architect, and carrying out the requests of the Bank ($10,149.06). These 5 vendors amount to a total of $163,390.33, or 88% of the outstanding amounts owed to third party vendors."

Receiver provided sufficient evidence that the third party claims were expenses of the receivership estate that could be charged to Builders.

Builders argues:  "While it is true that a receiver is the real party in interest with regard to receivership property, . . . and therefore has the exclusive right to pursue claims *on behalf of the receivership estate*, that does not make the Receiver the real party in interest with regard to third party claims against [Builders].  The Receiver could only advance the claims of, for instance, the architect or general contractor against [Builders] if the receivership itself would be liable for such debts and there was a shortfall in the receivership assets.  Otherwise, the Receiver would simply and gratuitously be asserting the claims of others.  Below, [Builders] demonstrates that because the Receiver cannot be liable for the third party claims *sub judice*, he cannot be the real party in interest with regard to those claims."

It appears that Builders objects to having to pay claims asserted against it by third parties.  But Receiver did not seek payment of such claims.  Rather, it sought payment of amounts the receivership estate owed, i.e., receivership expenses.  If otherwise, it was incumbent upon Builders to point to supporting evidence in the record.  Builders does not

14

point to any such evidence. Rather, it argues that it made a showing below that Receiver cannot be liable for the third party claims and thereby tacitly invites us to search the record for an argument it purportedly made at an unspecified time in unspecified papers. We decline to do so. Waiver can be found if an argument is not supported by analysis in an appellant's briefs. (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 366.) Going a step further, we conclude that whether Receiver is liable is a red herring because the issue is whether the third party claims represent expenses of the receivership estate.[4]

B. <u>Time Bar</u>.

Builders argues that Receiver should not have sought payment of the third party claims because they were barred by various statutes of limitation. In its opening brief, Builders cites *Ostrowski v. Miller* (1964) 226 Cal.App.2d 79, 87 (*Ostrowski*) as authority. As we discuss, that case is inapposite.

In *Ostrowski*, two parties sued others to dissolve an investment venture and Miller was appointed receiver. Subsequently, investors sued the members of the venture, and also Miller. Miller filed a demurrer. The trial court reserved its ruling for 30 days so that the investors could obtain an order permitting an action against the receiver.[5] Permission was denied. The demurrer was sustained without leave to amend, and the action was dismissed with prejudice. While the *Ostrowski* court held that the demurrer had been properly sustained because it was, in essence, a plea in abatement based on lack of permission to sue, it went on to also hold that the dismissal should have been *without* prejudice. The *Ostrowski* court explained that a "'plea in abatement, without disputing the justness of plaintiff's claim, objects to the place, mode, or time of asserting it and requires *pro hac vice* that the judgment be given for the defendant, leaving it open to

---

[4]     In its reply brief, Builders makes additional arguments. Fairness militates against our consideration of arguments first raised in a reply brief. (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11.)

[5]     "A receiver is a court-appointed official who can be sued only by permission of the court appointing him." (*Ostrowski*, *supra*, 226 Cal.App.2d at p. 84.)

renew the suit in another place, or form, or at another time. It must not only point out the plaintiff's error, but must show him how it may be corrected, or, in technical language, it must give the plaintiff a better writ.' [Citations.] While, in the case at bar, plaintiff's inability to obtain the consent of the Kern County court to this action against the receiver required the entry of judgment in favor of defendant receiver, such judgment could and should not bar the assertion of any claim plaintiffs may have against the receiver in another action, should the Kern County court hereafter and before such claim outlaws, consent to such an action. It is possible that that court might on a later determination consent to such a suit. The court in this case had no right to bar that possibility." (*Ostrowski*, *supra*, 226 Cal.App.2d at p. 87.)

Builders seizes on the "outlaw" comment in *Ostrowski* and tacitly suggests it stands for the proposition that a party to be charged for receivership expenses can avoid paying by raising applicable statutes of limitation with respect to any expenses related to third party claims. This reading of *Ostrowski* is not permissible. At most, the "outlaw" comment suggests that a person's lawsuit against a receiver could be subject to various defenses, i.e., statutes of limitation. Because *Ostrowski* does not give a party a statute of limitations defense to being charged with a receivership expense, *Ostrowski* does not aid Builders' cause. The reason is plain: A hearing on a final account and report is not an action to which statutes of limitation apply.

Our analysis could end here.

We note that in the reply brief, Builders argues that "[t]o require payment of claims that are time-barred would be grossly inequitable," and "[t]o require [Builders] to pay the expired claims would be doubly inequitable . . . because . . . the Receiver actually breached its fiduciary duty to [Builders] by failing to defend the Receivership Estate against the stale third-party claims[.]"

Builders cites no law in support of these arguments other than *Security Pacific National Bank v. Geernaert* (1988) 199 Cal.App.3d 1425, 1431–1432 (*Security Pacific*), which stated: "A receiver is an officer or representative of the court appointed to manage property that is the subject of litigation. [Citation.] The receiver is not an agent of either

16

party to the action.  The receiver represents all persons interested in the property.  [Citations.]  In other words, a receiver acts as a fiduciary on behalf of [the] parties as a representative and officer of the court."

Builders misreads *Security Pacific* to imbue a receiver with a duty of care and loyalty to protect every interest of all parties.  To the degree *Security Pacific* suggests a receiver acts as a fiduciary on behalf of parties to an action, it can only refer to duties related to the management of property to preserve or augment its value.  Otherwise, a receiver would have paralyzing conflicts of interest.  California Rules of Court, rule 3.1179(a)(2), (3) confirms that a receiver has no duty of care or loyalty to a party by stating that a receiver is not an agent of any party and therefore is "neutral," "[a]cts for the benefit of all who may have an interest in the receivership property," and "[h]olds assets for the court and not for the plaintiff or the defendant."

But all of the preceding pales in comparison to the policy considerations.  It would be inequitable and against wise policy for courts and receivers to induce third parties to perform work and services on behalf of a receivership estate and then deny payment due to lapse of time before the final accounting.  This would create a disincentive for third parties to contract with court-appointed receivers, it would undermine the integrity of the judicial system, and it would unjustly enrich an entity such as Builders who benefited from third party work and services.

17

**DISPOSITION**

The order is affirmed.

Receiver is entitled to its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, Acting P. J.
     ASHMANN-GERST

We concur:

_____, J.
  CHAVEZ

_____, J.
  HOFFSTADT