**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-23-0000513**
**30-MAR-2026**
**09:48 AM**
**Dkt. 52 MO**

NO. CAAP-23-0000513


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


KA'U ANDRADE CONTRACTING, INC. a Hawai'i Corporation,
Plaintiff-Appellee,
v.
ALLISON NAITO, Defendant/Third-Party Plaintiff/Counterclaim
Defendant-Appellant, and TIARE LANI COFFEE, INC.; GEORGE YASUDA,
Third Party Defendants-Counterclaimants-Appellees, and
JOHN DOES 1-100, JANE DOES 1-100, DOE CORPORATIONS 1-100,
DOE PARTNERSHIPS 1-100, DOE ENTITIES 1-100 and
RICHARD ROES 1-100, MARY ROES 1-100, ROE CORPORATIONS 1-100,
ROE PARTNERSHIPS 1-100, ROE ENTITIES 1-100, Defendants.


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CASE NO. 3CC18100217K)


MEMORANDUM OPINION
(By: Nakasone, Chief Judge, Wadsworth and McCullen, JJ.)

Defendant/Third-Party Plaintiff/Counterclaim

Defendant-Appellant Allison Naito (**Dr. Naito**) appeals from the

Circuit Court of the Third Circuit's August 4, 2023 First

Amended Judgment and various underlying orders.[1]  We vacate in part and remand.

## I.   BACKGROUND

Dr. Naito resides in Huntington Beach, California, where she owns a veterinary practice with thirty-five employees. In 2016, she purchased a 304-acre property in Hōlualoa, on the Island of Hawaiʻi, for $3,975,000.00 sight unseen.  Dr. Naito planned to develop a coffee farm.

In June 2017, having no prior experience managing a coffee farm, Dr. Naito contracted with Third-Party Defendants/ Counterclaimants-Appellees George **Yasuda** and his company **Tiare Lani** Coffee, Inc. to develop a coffee farm on her newly acquired property.

According to the contract, Tiare Lani was hired "for the purpose of planning, planting, placing coffee tree [sic], initial pruning and initial fertilizing of approximately 10 acre [sic] coffee orchard" on Dr. Naito's property.

---

[1]  The Honorable Robert D.S. Kim presided.

Dr. Naito also seeks review of the circuit court's various underlying orders, including the:  (1) August 4, 2023 "First Amended Findings of Fact and Conclusions of Law, and Order"; (2) August 3, 2023 "Order Granting [Third-Party] Defendants and Counterclaimants Tiare Lani and George Yasuda's Motion for Attorneys' Fees and Costs"; (3) November 25, 2022 "Order Re: Testimony of Potential Witness Kraig Lee"; and (4) December 8, 2022 "Order Denying Defendant and Third-Party Plaintiff Allison Naito's Motion for Total/Partial Summary Judgment as to [Third-Party] Defendants on the [Third-Party] Complaint and on the Counterclaim Against Movant."

The contract provided that Dr. Naito would pay Tiare Lani $405,000.00:

> 4.      The Owner [(Dr. Naito)] shall pay the Consultant [(Tiare Lani)] the total sum of $405,000.00 for Consultant's services plus [Hawai'i] General Excise Tax.  With the General Excise Tax the Owner shall pay the Consultant $421,876.35.  The Owner shall pay the Consultant 50% of the Consultant's fee, or $210,938.17 (includes the General Excise Tax), 30 days prior to the commencement of the Consultant's work.  The 2nd draw of 25% which equals $105,469.09[] (includes the General Excise Tax) will be due one week after start date.  The final draw of 25% which equals $105,469.09 (includes the General Excise Tax) is due at 75% completion of the project or when 10% of the total number of coffee trees have been planted. . . . Moreover, Owner shall be responsible for any and all attorney's fees and costs as well as any additional fees and costs the Consultant incurred as a result of collection of any overdue balance.

(Formatting altered and emphasis added.)

As specified under the contract, Tiare Lani was to plant no fewer than 425 trees per acre, with the cost of the trees, grass seed, and fertilizer included:

> 6.      The Consultant agrees to plant no less than 425 trees per acre on the Owner's property and no more than 605 trees per acre at the sole discretion of the Consultant.  The cost of said coffee trees, grass seed and fertilizer is included in the consideration to be paid to the Consultant as stated in paragraph 4 above. . . . Delays resulting by other contractors resulting in added costs shall be paid by owner. Delays not caused by Tiare Lani Coffee, Inc[.] will be subject to an [sic] 12% increase in costs per year.

(Formatting altered and emphases added.)  As stated above, costs related to delays by other contractors were Dr. Naito's responsibility.

3

The contract further provided that Tiare Lani would not be responsible for non-performance due to "pig and animal damage":

> 25.  Force majeure.  The Consultant shall not be held liable for non-performance of this Agreement in the event that completion of the consultant's work is hindered, barred or made impossible due to Acts of God, riots, Government policy changes, pig and animal damage, strikes, harsh weather, epidemics, vandalism and any other unforeseen circumstances not caused by, and beyond the control of, the Consultant[.]

(Formatting altered and second and third emphases added.)

Plaintiff-Appellee **Kaʻu Andrade** Contracting, Inc., a licensed excavator, was hired to perform excavation work on the property.  Also, Dr. Naito approved an October 2017 bid for "pig proof fencing," but it was never built.

It appears uncontested that by November 2017, Dr. Naito had paid Tiare Lani all of the amounts owed under the contract.

Also in November 2017, Dr. Naito hired Sara **Moore** as a consultant.  "One of the first things . . . Moore did after being given the job was to ask Dr. Naito to 'hold off on any other fencing designations until [Moore got] a handle on the pasture situation.'"  Apparently, some "pig proof fencing" was then done by Moore's "significant other's son."

About five months later, on May 3, 2018, Moore wrote to Dr. Naito, "describing Yasuda as less than trustworthy and recommending that [Yasuda] not continue on the contract."  The

4

next day, Dr. Naito instructed Yasuda to stop work. At some point after instructing Yasuda to stop work, Dr. Naito hired Kraig **Lee**, a real estate broker, to help manage the coffee farm.

When Dr. Naito failed to pay Ka'u Andrade for its work, Ka'u Andrade initiated the underlying suit to foreclose on its mechanic's lien attached to the property. Dr. Naito brought a third-party claim against Tiare Lani, asserting liability for Dr. Naito's debts to Ka'u Andrade.[2]

Tiare Lani counterclaimed for contract damages resulting from Dr. Naito's unilateral termination of the contract. Tiare Lani alleged it "suffer[ed] the loss of the coffee trees being maintained for planting at [Dr. Naito's] property and otherwise . . . suffer[ed] losses including seed stock, nursery stock, additional and extraordinary costs to maintain coffee trees, labor and otherwise to suffer damages to be shown at trial."

The circuit court held a seven-day, jury-waived trial. While Yasuda was testifying, Lee inadvertently entered the courtroom and sat through a portion of Yasuda's testimony. The circuit court then excluded Lee from testifying as a witness

---

[2] Dr. Naito's third-party complaint alleged (1) fraud and omissions to state material facts, (2) a claim for restitution, (3) negligence, (4) breach of contract, and (5) rescission.

for Dr. Naito but allowed his deposition testimony to be offered instead.[3]

The circuit court ruled in favor of Kaʻu Andrade and Tiare Lani. In uncontested findings, the circuit court found, among other things, that Moore and another of Dr. Naito's experts, Sarah "Sally" Rice, did not ascertain the number of acres or trees that had been planted when the contract was terminated; 4,500 trees were planted by May 4, 2018; Tiare Lani suffered pig-damage-related losses; Dr. Naito was informed she would be charged for those losses; and those losses were $29,780.00 for maintenance and $21,450.00 for the value of the trees:

> 54. Sara Moore was present and accompanied Sally Rice on the inspection she conducted lasting one (1) hour, and Sara Moore confirmed that they did not count trees or try to measure the acreage that had been planted by the date of Tiare Lani's termination.
>
> . . . .
>
> 61. Dr. Naito had a crop at her property in 2020, less than two years after she fired Tiare Lani and Yasuda.
>
> . . . .
>
> 66. Sally Rice's tree count is incorrect as there were 4,500 trees planted by Tiare Lani by May 4, 2018, and the total number of trees that had been devoted to the job, including those lost to the pigs, was 7,500.
>
> . . . .

---

[3] Dr. Naito "filed" Lee's deposition with the court. But Dr. Naito does not identify where in the record the deposition was offered as an exhibit during trial or entered into evidence by the court.

71.  Dr. Naito unilaterally terminated Tiare Lani and Yasuda with an email on May 4, 2018, the day after she received Sara Moore's email advising her to do so.

. . . .

74.  Dr. Naito was informed that Tiare Lani would charge Dr. Naito for trees lost by reason of the delay in authorizing pig proof fencing.

75.  Yasuda informed Dr. Naito that he had outstanding charges for maintenance bills, fungicide and fertilizer and application costs, totaling $29,780 which he presented to Dr. Naito in an email on May 8, 2018, and, in an attempt to compromise and resolve the matter Yasuda offered to accept $13,790 "as a gesture of goodwill".

76.  Dr. Naito and Yasuda's negotiated settlement was ultimately not consummated because, despite agreeing to all the terms, Dr. Naito refused to sign the Termination Agreement presented for signature by Yasuda.

77.  At the end of their negotiations, Dr. Naito sent an $11,000.00 cashier's check that was not cashed by Yasuda because it included a recitation in the memo field reciting it was payment in full.

. . . .

79.  Tiare Lani issued invoices for maintenance for upkeep billed at the hourly rates provided in the contract and has been damaged in a sum not less than $29,780.

80.  Tiare Lani was unable to sell the 1,430 coffee trees that had been planned for installation at Dr. Naito's property and lost the value of such trees ($15 X 1430 = $21,450) and the unpaid maintenance costs totaling $29,780.

. . . .

173. The Court finds that Dr. Naito has not adduced credible or persuasive evidence to support her defenses, affirmative or otherwise.

(Record citations omitted.)

Although contested by Dr. Naito, the circuit court found that "Dr. Naito's testimony was not credible."

In unchallenged conclusions, the circuit court determined that Dr. Naito breached the contract and was not entitled to recover because she failed to prove her claims:

15.   Yasuda's contract with Dr. Naito was an arms length agreement made by sophisticated business people who understood the terms of the contract, which contract is without ambiguity and speaks for itself.

. . . .

21.   By her unilateral termination of Tiare Lani and failure to pay outstanding charges for maintenance, fertilizer, etc., Dr. Naito is in breach of her contract and is liable for damages and attorneys [sic] fees as provided in the contract.

22.   Dr. Naito is not entitled to recover because she failed to prove misrepresentation, a breach of contract, or negligence, and she is not entitled to rescission or restitution even if she had proven her case. . . .

. . . .

48.   . . . . Dr. Naito later admitted that she had no budget, and that she was just displeased that the project cost more than she had anticipated.

The circuit court awarded Tiare Lani $51,230.00 — $21,450.00 for the value of the 1,430 trees and $29,780.00 for maintenance and upkeep of the trees — in damages on its third-party counterclaims and $158,217.50 in attorneys' fees and costs, including general excise tax, under Hawai'i Revised Statutes (**HRS**) § 607-14 (2016).

After the circuit court entered its final judgment, Dr. Naito settled with Ka'u Andrade.  Thus, only the circuit court's decision as to Tiare Lani is before this court on appeal.

8

## II. DISCUSSION

On appeal, Dr. Naito contends the circuit court erred by (1) excluding her witness (Point of Error (**POE**) B), (2) awarding $21,450.00 and $29,780.00 in damages to Tiare Lani (POEs A and F), (3) awarding attorneys' fees and costs to Tiare Lani (POEs C and D), and (4) "imposing a blanket waiver of [her] defenses and causes of action" (POE E).[4] We vacate $21,450.00 awarded in damages and $810.00 awarded in attorneys' fees. We also remand the case to the circuit court to redetermine the award of challenged clerical attorneys' fees and to recalculate the general excise tax. We otherwise affirm.

## A. The Circuit Court Did Not Abuse Its Discretion in Excluding Lee from Testifying (POE B)

We address Dr. Naito's second point of error first. Dr. Naito contends the circuit court abused its discretion when

_____

[4] Naito's points of error are as follows:

A. "The circuit court erred in dispensing of Appellant's claims for partial recission [sic], offset, and unjust enrichment."

B. "The circuit court erred and abused its discretion in barring testimony from Kraig Lee."

C. "The circuit court erred by failing to apply the 25% cap under HRS § 607-14 to the Fee Award."

D. "The circuit court abused its discretion in failing to discount the Fee Award for improper billing entries."

E. "The circuit court erred and abused its discretion in imposing a blanket waiver of all Appellant's defenses and causes of action."

F. "The circuit court erred as a matter of law in applying [Hawaiʻi]'s licensure laws and regulations."

it barred Lee from testifying despite acknowledging Lee's inadvertent violation of the circuit court's witness exclusion order.  Dr. Naito asserts she was prejudiced by the sanction because Lee's deposition, which Dr. Naito was permitted to offer in lieu of Lee's live testimony, was essentially cross-examination and there were no other competent witnesses to testify to the number of coffee trees planted by Tiare Lani.

Hawai'i Rules of Evidence Rule 615 authorizes the circuit court to "order witnesses excluded so that they cannot hear the testimony of other witnesses."  The purpose of this rule is "to prevent the shaping of testimony by one witness to match that of another, and to discourage fabrication and collusion."  State v. Elmaleh, 7 Haw. App. 488, 492, 782 P.2d 886, 889 (App. 1989) (quoting Miller v. Universal City Studios, Inc., 650 F.2d 1365, 1373 (5th Cir. 1981)).  The circuit court's evidentiary sanctions are reviewed for abuse of discretion.  See Harkins v. Ikeda, 57 Haw. 378, 384, 557 P.2d 788, 792 (1976).

Dr. Naito does not challenge the existence of an order excluding witnesses or Lee's violation of such an order.

In his declaration, Lee stated he was subpoenaed to appear and was advised to wait in the courthouse hallway until called.  Lee further stated that he arrived at the courthouse around 3:15 p.m., and after waiting for some time, he entered the courtroom.  He waited in the back of the courtroom for about

10

twenty to twenty-five minutes, and he heard Yasuda testify about flooding and erosion and work done by Ka'u Andrade.

According to the circuit court minutes, Naito's attorney began his cross-examination of Yasuda at 3:07 p.m., which would be shortly before Lee said he arrived at court. Following testimony regarding work done by Ka'u Andrade, Yasuda testified that, when he was paid the contract price in November 2017, he had planted "well over a thousand something trees."

Ka'u Andrade's attorney began his cross-examination of Yasuda at 3:40 p.m. Yasuda testified as to the acres and trees he had planted by November 2017. Court adjourned at 3:59 p.m.

The circuit court found that Lee inadvertently entered the courtroom during Yasuda's testimony and remained there until the court recessed for the day. The circuit court excluded Lee from testifying but allowed his deposition testimony to be offered instead.

By excluding Lee from testifying during the trial, the circuit court prevented any prejudice to Tiare Lani from Lee possibly shaping his testimony based on hearing Yasuda's testimony. See Elmaleh, 7 Haw. App. at 492, 782 P.2d at 889. And by allowing Dr. Naito to offer Lee's deposition testimony instead, the circuit court provided Dr. Naito with a means to mitigate some of the prejudice she may have thereby suffered.

11

In doing so, the circuit court did not disregard rules or principles of law.

Thus, the circuit court did not abuse its discretion by excluding Lee from testifying and allowing Lee's deposition to be offered instead.

**B.   We Vacate the $21,450.00 Award and Affirm the $29,780.00 Award (POEs A and F)**

Second, Dr. Naito challenges the circuit court's award of damages to Tiare Lani on their third-party counterclaim, arguing that (a) Tiare Lani was barred from recovery because it was not licensed, and (b) the judgment against her should be reduced.

**(1)   Tiare Lani Was Not Required to Be Licensed**

Dr. Naito contends the circuit court erred by concluding Tiare Lani was not required to be licensed under either HRS chapters 464 or 444.  Dr. Naito also argues that Hawaiʻi licensing laws apply to the extent that Tiare Lani was engaged in "civil engineering" under Hawaiʻi Administrative Rules (**HAR**) § 16-115-2 (2013).  As such, Dr. Naito argues that Tiare Lani should have been barred from recovery under HRS § 436B-26 (2013).

HRS § 436B-26 bars recovery in any civil action for any work requiring licensure where the party failed to maintain a current and valid license:

12

> The failure of any person to maintain a current and a valid license prior to engaging in any activity requiring licensure by the licensing authority shall prevent such person from recovering in a civil action for work or services performed or materials or supplies furnished, or both, on a contract or on any legal basis to recover the reasonable value thereof.

Dr. Naito argues that Tiare Lani was required to be licensed as a "landscape architect" under HRS chapter 464. It is undisputed that Tiare Lani was not licensed. However, agricultural work relating to the development of an orchard is exempt from the chapter's licensure requirements:

> Nothing in this chapter shall be construed as applying to the business conducted in this State by any agriculturist, horticulturist, tree expert, arborist, forester, gardenshop operator, nursery operator or landscape nursery operator, gardener, landscape gardener, landscape contractor, landscape designer, landscape consultant, garden or lawn caretaker, or cultivator of land, as these terms are generally used . . . .

HRS § 464-5 (2013). As such, Dr. Naito's HRS chapter 464 argument is unavailing.

Relatedly, Dr. Naito argues that Tiare Lani was a "civil engineer" within the meaning of HAR § 16-115-2. However, HAR § 16-115-1 (2013), explains that the purpose of the chapter is to "clarify and implement" HRS chapter 464, and not to impose additional licensing requirements not contemplated under that chapter. Accordingly, Dr. Naito's argument under the HAR fails for the reasons discussed above.

Dr. Naito also suggests that Tiare Lani was required to be licensed under HRS chapter 444, which governs the licensure of contractors. However, Dr. Naito does not argue, or

13

cite any authority in support of her contention, that Tiare Lani was required to be licensed under HRS chapter 444. The argument is therefore waived. Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(b)(7) ("Points not argued may be deemed waived.").

In sum, the circuit court did not err when it concluded that Tiare Lani did not fall within the ambit of Hawai'i licensing statutes.

### (2) Reduction of Damage Award

Dr. Naito contends the judgment should be reduced. Dr. Naito's various arguments in support of reducing the judgment in favor of Tiare Lani do not comply with HRAP Rule 28(b)(4). We nevertheless address those arguments to the extent they are discernible. See Marvin v. Pflueger, 127 Hawai'i 490, 496, 280 P.3d 88, 94 (2012) (describing our court's "policy of affording litigants the opportunity 'to have their cases heard on the merits, where possible'") (citation omitted).

**(a)** The circuit court found that "Dr. Naito unilaterally terminated Tiare Lani and Yasuda with an email on May 4, 2018." Dr. Naito contends this finding was clearly erroneous and cites, as evidence that the contract was "mutually" cancelled, Tiare Lani's responsive email, in which Tiare Lani stated, "I will agree to terminate the contract by agreeing to stop work as you requested."

14

"Where there is substantial evidence, which is credible evidence of sufficient quantity and probative value to justify a reasonable person in reaching conclusions that support the [findings of fact], the [findings of fact] cannot be set aside." Cowan v. Exclusive Resorts PBL1, LLC, 156 Hawaiʻi 268, 272, 574 P.3d 288, 292 (2025) (quoting Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 116, 839 P.2d 10, 28 (1992)).

The record contains substantial evidence showing Dr. Naito was unequivocal that Tiare Lani was no longer to perform under the contract:  "As of today - you are to stop work at the coffee farm on my land.  I do not want any more work done."

Thus, the circuit court's finding that termination was unilateral was not clearly erroneous.

**(b)**  Relatedly, Dr. Naito argues that she is entitled to an offset of $77,660.00 against the judgment in favor of Tiare Lani because Tiare Lani ultimately planted only eight of the ten acres contracted for.[5]  Dr. Naito challenges the circuit court's mixed finding and conclusion that "[t]he contract is enforceable according to its terms and may not be rescinded after full performance by Tiare Lani and Yasuda."

---

[5]  Rather than use the total value of the contract ($405,000.00), Dr. Naito's calculation is based on the portion of the contact designated "[t]o install coffee orchard":  ($388,300.00 ÷ 10) x (10 - 8) = $38,330.00 x 2 = $77,660.00.

15

A conclusion of law "that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case." Id. (quoting Amfac, 74 Haw. at 119, 839 P.2d at 29).

Dr. Naito asserts an offset is warranted because "the injured party has a right to damages based on his expectation interest as measured by the loss in the value to him of the other party's performance caused by its failure or deficiency." Kawakami v. Kahala Hotel Invs., LLC, 142 Hawai'i 507, 517, 421 P.3d 1277, 1287 (2018) (ellipsis, brackets, and emphasis omitted) (quoting Restatement (Second) of Contracts § 347(a) (A.L.I. 1981)).

Here, the record shows Dr. Naito was the breaching party, not Tiare Lani. Accordingly, Dr. Naito was not entitled to her expectation interest under the contract. See id.

Moreover, the circuit court made no finding as to the number of acres planted when Dr. Naito ordered Yasuda to stop the work in May 2018. Dr. Naito appears to rely on Yasuda's testimony that he planted eight acres. However, Yasuda's testimony was that he planted eight acres by November 2017:

> [Tiare Lani's Counsel:]  As of the meeting of November of 2017, how many of the acres had been planted?
>
> [Yasuda:]  So how much did I plant?
>
> [Tiare Lani's Counsel:]  What acreage, not trees at this time.
>
> [Yasuda:]  Approximately eight.
>
> [Tiare Lani's Counsel:]  On those eight acres, about how many trees had been installed?
>
> [Yasuda:]  We planted approximately 4,500, give or take, but we also planted another totaled maybe up to 7,500, I mean, including the originals we planted.  Not -- that would have been replaced with new trees because of the extensive pig damage we were having.

Exhibit TL-1 1229E makes reference to 8.13 acres based on rows, trees, and spacing but makes no reference to a date. Dr. Naito does not point to anywhere in the record that shows only eight of the ten acres were completed when she ordered Yasuda to stop work five months later in May 2018.

Without an evidentiary basis in the record showing eight acres were in fact planted at the time she terminated Tiare Lani, there is no support for Dr. Naito's claim that she is owed an offset.

The circuit court found that "4,500 trees were planted by Tiare Lani by May 4, 2018, and the total number of trees that had been devoted to the job, including those lost to the pigs,

was 7,500."  Dr. Naito does not challenge this finding in her points of error.[6]  See HRAP Rule 28(b)(4).

The contract provided that Tiare Lani was hired "for the purpose of planning, planting, placing coffee tree [sic], initial pruning and initial fertilizing of [an] approximately 10 acre coffee orchard" on Dr. Naito's property.  (Emphasis added.) The contract also stated that Tiare Lani "agrees to plant no less than 425 trees per acre on [Dr. Naito]'s property and no more than 605 trees per acre at the sole discretion of" Tiare Lani.

Even if there was a basis in the record to conclude only eight acres were completed by May 2018, according to the contract, Tiare Lani was required to plant a minimum of 4,250 trees over "approximately" ten acres.  Based on the court's finding, Tiare Lani planted 4,500 trees.  And, as to an "approximately 10 acre coffee orchard," "approximately" is an adverb meaning "nearly correct or exact."  Approximate, Merriam-Webster's Collegiate Dictionary 61 (11th ed. 2003).

---

[6]  Although Dr. Naito does not challenge this finding in her points of error as required by HRAP Rule 28(b)(4), she states in the argument section of her opening brief that, "tree counts were not sufficiently supported in the record."

Because the circuit court's finding was supported by the probative testimony of Kekoa Yasuda, which the circuit court found credible, the finding was not clearly erroneous.  See Cowan, 156 Hawaiʻi at 272, 574 P.3d at 292.

When considering the circuit court's finding as to the 4,500 trees planted and the common definition of "approximately," we cannot say that the circuit court's finding that Tiare Lani fully performed under the contract was clearly erroneous.

In sum, Dr. Naito failed to meet her burden of showing the circuit court's mixed finding and conclusion was clearly erroneous or that she was entitled to a $77,660.00 offset.

**(c)** Dr. Naito also argues that because the contract was for a fixed price, Tiare Lani assumed the risk of increased costs from pig damage and so was not excused from performing. Specifically, Dr. Naito argues, "Here, under the fixed price Contract, and given the dealings of the parties and nature of the enterprise as a whole, [Tiare Lani] assumed the risk of their decision to proceed with planting before pig proof fencing was complete."[7]

Dr. Naito cites authority that "[a] pure-fixed price contract requires the contractor to furnish the goods or services for a fixed amount of compensation regardless of the costs of performance, thereby placing the risk of incurring

---

[7] Dr. Naito asserts, as a separate argument, that Tiare Lani "should not have received any credit for the losses they incurred as a result of their failure to exercise reasonable care and/or their knowing decision to prematurely plant trees before pig proof fencing was complete." This argument fails for the same reasons discussed here.

unforeseen costs of performance on the contractor."  Bowsher v. Merck & Co., 460 U.S. 824, 826 n.1 (1983) (quoted in Fitzgerald v. Pac. Source, Inc., CV No. 11-00111 DAE-KSC, 2012 WL 1537482, at *8 (D. Haw. Apr. 30, 2012)).

This argument fails for two reasons.  First, the contract included a force majeure clause that expressly excused nonperformance resulting from "pig or animal damage."  Second, Dr. Naito effectively restates her negligence claim, which the circuit court rejected, as discussed below.

**(d)**  Dr. Naito argues that "awarding Appellants $29,870, plus $21,450 for the undelivered 1,430 trees resulted in a windfall" because "the cost of the trees was included in the cost of the Contract price, and additional trees were already factored into the $29,780 figure."

Under the contract, "[t]he cost of said coffee trees, grass seed and fertilizer is included in the consideration to be paid to" Tiare Lani.  But, the contract also provided that Tiare Lani was not responsible for nonperformance due to damage caused by pigs.

The circuit court found that "Dr. Naito was informed that Tiare Lani would charge Dr. Naito for trees lost by reason of the delay in authorizing pig proof fencing."  The circuit court cited to Tiare Lani's Exhibit TL-73 in evidence.  There, Yasuda sent Dr. Naito pictures of the pig damage.  He stated

20

that he repaired the damage and sent her a photo of the trees planted. Yasuda informed Dr. Naito that pigs were coming in every night and sometimes over 100 trees were damaged.

The circuit court also found that "Yasuda informed Dr. Naito that he had outstanding charges for maintenance bills, fungicide and fertilizer and application costs, totaling $29,780." In the relevant email, Yasuda included "the cost of additional trees":

> I will agree to terminate the contract by agreeing to stop work as you requested and also drop off at an agreed upon nearby neutral spot the adjusted balance of the coffee trees of approximately 1430 trees. Per the signed contract, I am not responsible for the many delays and loss of trees due to the major delays in getting the pig proof fencing in, delays in the water tanks installation, delays in the obtaining the County permit, extensive loss of trees due to pig damage and inclement weather. However, I will subtract your labor costs to plant the adjusted balance of trees and the costs for the short section of irrigation from the overdue amount you owe me for orchard maintenance, fungicide and fertilizer material and application costs, the cost of additional trees[,] etc. The amount you owe me will thus be reduced from a discounted $29,780(the amount owed me is actually more due to loss of nursery trees due to the many delays that you created and that Robin Yoshida, your former General Manager can confirm and testify to) to a reduced amount of $13,790, as a gesture of goodwill.

(Emphases added.)

Relying in part on this email, the circuit court found that "Tiare Lani issued invoices for maintenance for upkeep billed at the hourly rates provided in the contract and has been damaged in a sum not less than $29,780." Dr. Naito does not challenge this finding.

21

The circuit court also found, that "Tiare Lani was unable to sell the 1,430 coffee trees that had been planned for installation at Dr. Naito's property and lost the value of such trees ($15 X 1430 = $21,450) and the unpaid maintenance costs totaling $29,780."  According to this finding, the circuit court valued the 1,430 trees at $21,450.00 separately from, and in addition to, the maintenance costs at $29,780.00.

Yasuda's email, however, discusses the 1,430 trees and states that the $29,780.00 amount includes "the cost of additional trees."[8]  Thus, we are left with a definite and firm conviction that this finding is clearly erroneous.  See In re Doe, 108 Hawai'i 144, 153, 118 P.3d 54, 63 (2005) (quoting Bremer v. Weeks, 104 Hawai'i 43, 51, 85 P.3d 150, 158 (2004), overruled on other grounds by, Hilo Bay Marina, LLC v. State, 156 Hawai'i 478, 575 P.3d 568 (2025)) ("A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed.").

With no evidence to support the finding that the $21,450.00 value of the 1,430 trees was separate from the

---

[8]  We note that Yasuda's answering brief does not point to where in the record the evidence shows that the 1,430 trees were not "the cost of additional trees" in the $29,780.00 amount, or that the value of the trees was $15.00 each.

22

$29,780.00 amount or not otherwise included in the original contract, we reduce the damages award by $21,450.00.

**C.    We Reduce the Award of Attorneys' Fees and General Excise Tax for Clerical Functions (POEs C and D)**

Third, Dr. Naito contends the circuit court abused its discretion by impermissibly awarding attorneys' fees under HRS § 607-14 that were inadequately described, block-billed, duplicative or excessive, and for clerical and administrative tasks.  Dr. Naito further argues that the award of attorneys' fees exceeded the twenty-five percent (25%) statutory cap.

HRS § 607-14 requires the taxing of attorneys' fees in favor of the prevailing party in a contract dispute:

> In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.
>
> . . . .
>
> The above fees provided for by this section shall be assessed on the amount of the judgment exclusive of costs and all attorneys' fees obtained by the plaintiff, and upon the amount sued for if the defendant obtains judgment.

23

**(1)** Dr. Naito argues that courts may not award fees that are "so vaguely generic that it is impossible to distinguish . . . between compensable and non-compensable claims." Hawaii Ventures, LLC v. Otaka, Inc., 116 Hawaiʻi 465, 478, 173 P.3d 1122, 1135 (2007).

Here, Dr. Naito complains of $13,080.00 in attorneys' fees with entries, such as "Work on file review . . . locate 'reports,'" arguing they are "too vague, ambiguous and generic to be able to ascertain whether such fees were reasonably or necessarily incurred in connection with the case." However, Dr. Naito makes no argument that the work is for non-compensable claims. Hawaii Ventures, which involved both compensable and non-compensable claims, is therefore inapposite. See id.

The circuit court did not abuse its discretion in awarding the complained-of attorneys' fees.

**(2)** Dr. Naito argues that courts may not award attorneys' fees for clerical functions because they are "part of an attorney's overhead and are reflected in the charged hourly rate." Sheehan v. Centex Homes, 853 F. Supp. 2d 1031, 1044 (D. Haw. 2011) (quoting Ko Olina Dev., LLC v. Centex Homes, CV. NO. 09-00272 DAE-LEK, 2011 WL 1235548, at *12 (D. Haw. Mar. 29, 2011)). Dr. Naito identifies these tasks as highlighted in yellow on the invoices submitted by Tiare Lani's counsel and claims these charges totaled $19,530.00. Dr. Naito relies on

24

Schefke v. Reliable Collection Agency, Ltd., 96 Hawai'i 408, 32 P.3d 52 (2001).

In its answering brief, Tiare Lani acknowledges Dr. Naito's request to reduce the award of fees by $19,530.00 for "impermissible administrative tasks such as scanning, printing and downloading."  Tiare Lani, however, makes no argument as to why the requested amounts for performing clerical tasks were permissible or reasonable.

Under Schefke, "[c]ourts should reduce an award of attorney's fees for excessive preparation time by the paralegal, duplicative efforts by the attorney and paralegal, and performance of clerical functions."  Id. at 458, 32 P.3d at 102.

"However, HRS § 607-14 provides the court with discretion in determining what fees are reasonable."  See Gailliard v. Rawsthorne, 150 Hawai'i 169, 178, 498 P.3d 700, 709 (2021) (holding that the Intermediate Court of Appeals did not abuse its discretion in granting fees for a request that "included time for drafting tables and a certificate of service, and e-filing a brief" because those tasks ensure the brief complies with court rules and were essential rather than clerical tasks (brackets omitted)); see also Chiang v. Ritz-Carlton Hotel Co., 155 Hawai'i 450, 565 P.3d 795, No. CAAP-21-0000703, 2025 WL 883982, at *2 (App. Mar. 21, 2025) (SDO) ("The time entry at issue, in context with surrounding entries,

25

indicates that [the attorney] forwarded a settlement authorization letter to Chiang via email, i.e., he engaged in an attorney-client communication regarding a legal document.").

Here, in reviewing the yellow-highlighted entries, there were numerous entries that identified tasks such as printing, copying, scanning, mailing, filing, saving documents, calendaring, and making payments.

There were twelve entries where clerical or administrative tasks were separately billed for a total of 2.7 hours:

| 12/15/2018 | "[C]opy Third Party Complaint, etc. for sharing with client and mail" | 0.2 |
| 01/24/2019 | "[P]rint, sign, scan, copy and mail to counsel, copy client and file" | 0.2 |
| 10/04/2019 | "Review invoice from Suite Possibilities and print for payment" | 0.2 |
| 10/05/2019 | "Review Invoice from Suite Possibilities and pay, scan for records" | 0.2 |
| 09/16/2021 | "[P]rint and save to files" | 0.2 |
| 12/20/2021 | "[R]eview and pay Rosenberg invoice" | 0.2 |
| 01/03/2022 | "[R]eview & pay invoice for continued Naito deposition" | 0.2 |
| 06/27/2022 | "[C]alendar" | 0.1 |
| 10/11/2022 | "[S]chedule Zoom meeting with Radine" | 0.2 |

| 11/26/2022 | "[D]ownload Orders re Kraig Lee, Robin Yoshida and Motion to Strike" | 0.3 |
|---|---|---|
| 12/16/2022 | "[W]ork on printing transcripts" | 0.5 |
| 1/18/2023 | "Email from Rhee re transcript costs and reimbursement" | 0.2 |

Tiare Lani's counsel billed at $300.00 per hour, resulting in $810.00 being charged for clerical or administrative tasks.

In addition, there were 145 entries where clerical tasks (such as printing, copying, scanning, mailing, filing, saving documents, and calendaring) were included with legal services provided. These combined entries totaled 40.5 hours, billed at $12,150.00.

In considering the pervasive inclusion of clerical tasks in counsel's billing invoices, the difficulty in separating the time spent on these tasks from legal services, and that Tiare Lani provides no argument in its answering brief to justify billing for clerical tasks, while also recognizing that some tasks such as printing and saving require almost no time to complete, reducing the $12,150.00 of awarded attorneys' fees appears reasonable. See Gurrobat v. HTH Corp., 135 Hawai'i 128, 135, 346 P.3d 197, 204 (2015) (citing Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007) (explaining that courts may reduce an award of attorneys' fees by a percentage

"to account for the increased difficulty in determining the reasonableness of hours billed").

In sum, the attorneys' fees awarded to Tiare Lani are reduced by $810.00, from $133,267.59 to $132,457.59. We remand the case to the circuit court to further reduce the remaining $12,150.00 of awarded attorneys' fees that include clerical tasks by an amount it determines reasonable. Accordingly, the circuit court is also instructed to recalculate the general excise tax.

**(3)** Dr. Naito argues that courts may not award fees for block-billed entries because it is "impossible to determine the reasonableness of the time spent on each task." Dr. Naito contests $5,400.00 in attorneys' fees with "block-billed entries."

"Block billing has been defined as 'the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" Gurrobat, 135 Hawai'i at 135, 346 P.3d at 204 (quoting Hawaii Ventures, 116 Hawai'i at 475, 173 P.3d at 1132). "Block billing may also be defined as the practice of lumping multiple tasks into a single time entry." Id. "Billing descriptions that merely detail the types of activities that make up a single general task will not normally support a block billing objection, provided the court can

28

determine the reasonableness of the hours expended on the general task." Id. at 136, 346 P.3d at 205.

In her opening brief, Dr. Naito points to an eight-hour period billed for a day that the record shows was for a full day of trial. Billing in an eight-hour increment was reasonable under that circumstance.

Otherwise, Dr. Naito identifies in her opening brief the entries she challenges as block-billed as those highlighted in blue. These entries appear to fall in the category of one general task, and Dr. Naito does not make any specific argument in her opening brief as to why any of those entries are indeed block-billed and should be denied.

The circuit court did not abuse its discretion by awarding the challenged attorneys' fees.

**(4)** Dr. Naito argues that courts may not award attorneys' fees for duplicative or excessive billing. We need not address this contention because Dr. Naito makes no showing that the attorneys' fees awarded by the circuit court were in fact duplicative or excessive.

**(5)** Dr. Naito argues the circuit court abused its discretion by awarding attorneys' fees in excess of the twenty-five percent (25%) cap imposed by HRS § 607-14, asserting that

the fees should have been capped at $78,053.50, rather than the $133,267.59 awarded.[9]

Where a party prevails both on the claim and the counterclaim, "the maximum amount of § 607-14 attorney's fees awardable is computed by applying the schedule to the judgment amount in [that party]'s favor and to the amount sued for in the counterclaim separately and adding the resulting products." Rodrigues v. Chan, 5 Haw. App. 603, 608, 705 P.2d 67, 71 (App. 1985).

Dr. Naito recites $260,984.00 as the amount sued for. Tiare Lani, on the other hand, contends that it was forced to defend against a "million-dollar Third-Party Complaint" and that Count 5 alone sought $510,260.05 in damages.

The circuit court granted the requested fees in full. Therefore, we may reasonably infer that the circuit court adopted Tiare Lani's reasoning as the movant. See Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawaiʻi 92, 123, 176 P.3d 91, 122 (2008).

Reviewing Dr. Naito's third-party complaint, it is evident on its face that Dr. Naito sought recovery for damages in excess of $260,984.00. Count 5 asserted that Tiare Lani "should be ordered to reimburse [Dr.] Naito for all sums paid to

---

[9] As discussed above, this amount will be reduced.

them and to third parties that were directed to perform work on the Property that were paid by [Dr.] Naito." (Emphasis added.) Dr. Naito's own expert, Sally Rice, calculated Dr. Naito's expenses (and thus Tiare Lani's liability) to equal $655,988.86.[10] Dr. Naito makes no specific argument on appeal that the amount sued for in Count 5 alone amounted to less than $510,260.05, consistent with Dr. Naito's own expert report and as argued by Tiare Lani in its attorneys' fees request.

The value of the Count 5 claim alone ($510,260.05) plus the reduced value of the judgment in Tiare Lani's favor ($29,780.00), amounts to $540,040.05, twenty-five percent (25%) of which ($135,010.01) already exceeds the total award of attorneys' fees at issue here ($133,267.59), prior to any reductions by this court and the circuit court on remand.

Accordingly, the award of attorneys' fees does not exceed the statutory maximum under HRS § 607-14.

D.    **The Circuit Court Did Not Err by Dismissing Dr. Naito's Third-Party Claims (POE E)**

Finally, Dr. Naito challenges the circuit court's dismissal of her third-party claims against Tiare Lani. In particular, Dr. Naito takes issue with the determination she "waived any defenses and/or causes of action due to her

---

[10]    This amount included $117,535.89 for water tank installation; $24,695.53 for drainage improvements; $3,497.39 for a fruit orchard; and $510,260.05 for the coffee orchard.

31

inconsistent testimony, her part performance as to the work undertaken, and her delegation of apparent and actual authority." Dr. Naito argues this determination was clearly erroneous because it was unclear whether it applied only to her defenses against Ka'u Andrade, which were subject to specific findings, or also to her claims and defenses against Tiare Lani, which were not.

Dr. Naito focuses on the circuit court's use of the word "waiver," suggesting that the dismissal of her claims and defenses amounted to a sanction for her lack of credibility. This is not the case. Instead, the record shows that the circuit court dismissed Dr. Naito's third-party claims because, as the circuit court found, "Dr. Naito has not adduced credible or persuasive evidence to support her defenses, affirmative or otherwise" and "she failed to prove misrepresentation, a breach of contract, or negligence, and she is not entitled to rescission or restitution."

These findings and conclusions were dispositive and are not challenged in Dr. Naito's points of error on appeal. See HRAP Rule 28(b)(4). As such, they are sufficient for this court to affirm the circuit court's decision.

### III. Conclusion

Based on the foregoing, we affirm in part and vacate in part the circuit court's August 4, 2023 First Amended

Judgment and remand this case to the circuit court for further proceedings consistent with this memorandum opinion.

DATED:  Honolulu, Hawaiʻi, March 30, 2026.

On the briefs:

Michelle J. Chapman,
Kaʻōnohiokalā J. Aukai IV,
(Case Lombardi), and
Alan H. Tuhy
for Defendant/Third-Party
Plaintiff/Counterclaim
Defendant-Appellant
Allison Naito.

Peter Van Name Esser,
for Third-Party Defendants/
Counterclaimants-Appellees
George Yasuda and Tiare Lani
Coffee.

/s/ Karen T. Nakasone
Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge